OF THE

## STATE OF WASHINGTON,

AT THE

# JANUARY SESSION, 1894.

[No. 1062. Decided January 8, 1894.]

GENEVIEVE GARDNER AND ROSALIND BEMIS, *Appellants,*
v. THE PORT BLAKELY MILL COMPANY, *Respondent.*

HUSBAND AND WIFE — PURCHASE OF PUBLIC LANDS — SEPARATE
PROPERTY — EVIDENCE — EXECUTION OF DEED.

Lands acquired by a married man under the act of congress pro-
viding for the sale of timber lands are his separate property, and
can be alienated without the consent of his wife. (DUNBAR, C. J.,
dissents.)

Where the validity of a deed as against third parties is contested
on the ground that it was an unacknowledged instrument, as dis-
closed by the record in the auditor's office, the original deed itself,
when purporting to be regularly acknowledged before a proper
officer, is admissible in evidence without further proof of its exe-
cution.

*Appeal from Superior Court, Kitsap County.*

*Fred. H. Peterson,* for appellants.

*Hughes, Hastings & Stedman,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—This action was brought to quiet title to a
quarter section of land in Kitsap county, which, on the

12th day of July, 1882, was government land.   On said date one William Cadwell made entry thereof under an act of congress entitled ''An act for the sale of timber lands in the states of California, Oregon, Nevada, and in Washington Territory,'' approved June 3, 1878 (20 U. S. St. at Large, p. 89).   At this time said Cadwell was the husband of the appellant Genevieve Gardner, and they were living together in the Territory of Washington, near the land in question. On the 20th day of January, 1883, a patent issued to said Cadwell under said act.   July 15, 1882, said Cadwell executed a deed of said land to the respondent.   The deed was drawn in form for his wife to sign, but she did not execute it and refused so to do.   On January 18, 1890, the respondent placed this deed and the patent aforesaid, which was in its possession, on record.

On the 24th day of October, 1882, said Cadwell procured a decree of divorce from his said wife, annulling the bonds of matrimony theretofore existing between them. No property was brought before the court in this action, and no attempt was made to dispose of the property rights of the parties in any way in the decree which was therein rendered.

September 30, 1891, said Cadwell executed another deed purporting to convey said land to one Ella White Peterson, and on October 7, 1891, said Ella White Peterson, by deed, attempted to convey the same to appellant Bemis. This action was begun November 11, 1891.   Neither of appellants have ever been in possession of said land, and it was at all times unoccupied.   The respondent exercised acts of ownership thereover in looking after the timber to prevent its destruction, and paid the taxes assessed against the same from year to year.   A trial was had, and the court below found in favor of the respondent.

It is contended by appellants that the land in question was community property at the time it was acquired by

Cadwell, and also at the time he executed the deed afore-said to the respondent, and that respondent at said times knew said Cadwell was a married man, and in consequence thereof, that the deed was void under the laws of the territory preventing a husband from conveying community real estate.    Appellants claim to each own an undivided half of said land — appellant Gardner by virtue of its having been the community property of herself and Cadwell while they were husband and wife, and appellant Bemis by virtue of the deeds from Cadwell to Peterson and from Peterson to herself, above mentioned.    It is contended by the respondent that this land was the separate property of said William Cadwell, and this is the principal question in the case.

By § 2 of the act in question the applicant is required to file a statement in writing and sworn to, containing the following, viz.:

"That deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself."

The practice is to allow the husband and wife each to make an entry of one hundred and sixty acres of land under the provisions of this act in this state, and this can only be done upon the ground that land so acquired is the exclusive individual property of the person acquiring it. We know of no case where the point in question has been decided, but in the light of the provision of the act itself, and the practice of the government in allowing husband and wife to each make application under the act, sufficient authority is afforded, in our opinion, for holding that land so

acquired is the separate property of the person acquiring it; and it being an act of congress, it takes precedence of our laws relating to the acquisition of community property.

There is little or no proof as to whether the money used by Cadwell in paying for it was community property. There is some evidence tending to establish this, and also an attempt to prove the contrary, but admitting that the money so used was the property of the community, the situation would not be altered as to the ownership of the legal title to the land.    As to whether the wife, on a show-ing that community money was used in the purchase thereof, could follow the same and obtain any rights in the land, we are not called upon to decide.    Such an attempt would have to be made without unreasonable delay, and if sufficient appears in this case to establish such equitable claim upon the part of appellant Gardner, she would be estopped by reason of her delay in the premises from undertaking to affect the title thereto in the respondent. Appellant Bemis was not a *bona fide* purchaser without notice.

It is further contended that the court erred in allowing the original deed from Cadwell to the respondent to be re-ceived in evidence.    It is contended by appellants that said deed was not acknowledged, and the record thereof fails to show any acknowledgment.    The deed itself, when introduced, purported to have been regularly acknowledged before a notary public, and contains the certificate, signa-ture and seal of such notary.

It is contended by the respondent that the certificate of acknowledgment is *prima facie* proof of the facts required to be recited therein, and this being true, no further proof of execution was necessary to render the deed admissible in evidence.    Our statutes providing for the execution and acknowledgment of deeds name the officers before whom acknowledgments can be taken; and set forth the form of

certificate in which the officer is required to state that the grantor has executed the instrument, and that the execution thereof was his voluntary act and deed. Gen. Stat., § 1437.

Section 1436, relating to acknowledgments taken without the state, provides that the certificate of acknowledgment shall be *prima facie* evidence of the facts therein recited.   It cannot be supposed that the legislature intended to give greater force and effect to acknowledgments taken without the state than to those taken by like officers within the state.   Furthermore, it is provided that a certified copy of a deed duly recorded shall be admitted in evidence, without further proof of execution. Gen. Stat., § 209; Code Proc., § 1685.   We do not think the legislature meant to give to a certified copy any greater legal sanctity than could be given to the original document itself.   Under the contention of appellants, the respondent had only to have its deed re-recorded if the original record thereof was incorrect, and then obtain a certified copy of such record, to have obviated the objections raised against it.   We are of the opinion that the deed was properly admitted in evidence.

Affirmed.

HOYT and STILES, JJ., concur.

ANDERS, J., not sitting.

DUNBAR, C. J.  (*dissenting*).— I am unable to agree with my brothers in the disposition of this case.   I do not think that property rights of citizens of this state can be affected by any construction which departmental officers place upon the laws of congress.   What is community property and what is separate property are questions which must be settled by a judicial construction of our own statutes enacted on that subject.   Although I do not think it necessarily is implied by the action of the department in

allowing both husband and wife to purchase a timber claim that such claim becomes separate property. A husband and wife may both acquire various kinds of property; but without it is acquired in the way pointed out by the statute for acquiring separate ·property, it is plainly community property. The affidavit of the applicant is substantially the affidavit required of a homestead applicant, and shows on its face that it is simply to prevent fraudulent or speculative entries. Applying the construction uniformly given by this court to the community laws to the conceded circumstances of this case, the money with which the land in question was purchased was community property; and if that be true, the land which is purchased is equally community property. It seems to me hardly worth while to enlarge on this proposition. If then the land was community property, the original deed must be pronounced absolutely void; for the purchaser, as shown by the record, knew of the community relation; knew that ·Cadwell was a married man; knew that she was a resident of this state, and tried to get her to sign the deed, which she refused to do. There is no question of estoppel or of innocent purchaser in the case. The vendor bought with his eyes wide open, knowing the facts in the case, and he is presumed of course to have known the law. He, therefore, received nothing by the deed, and the wife was justified in absolutely disregarding the transaction. I am not able to agree with the other propositions urged by respondent, which the majority has not discussed, and believe the court erred in not sustaining the demurrer interposed to the answer.