[No. 2995. Decided June 13, 1900.]

EDWARD BLEWETT, *Respondent,* v. ALBERT W. BASH *et al., Defendants,* CHARLES BRUHN *et ux., Appellants.*

EVIDENCE—EXECUTION OF MORTGAGE—SUFFICIENCY OF PROOF.

The introduction in evidence of an original deed or mortgage, with the certificate of acknowledgment in due form by the notary public or other authorized officer, constitutes *prima facie* proof of its execution.

SAME—ACTION BY GUARANTOR—ADMISSIBILITY OF ALTERED INSTRUMENT.

In an action by the guarantor of a note to recover from the maker the amount he was compelled to pay thereon, the guaranty is admissible in evidence without previous explanation as to the erasure therefrom of the name of another guarantor, when there is no issue in the pleadings as to the release of any of the guarantors and nothing in the record to show that plaintiff had been released from his obligation as guarantor.

SAME—VARIANCE—ALLEGATION OF SEVERAL GUARANTY WHEN OBLIGATION JOINT.

Although a guaranty upon a promissory note may be a joint, and not a joint and several, obligation, yet where one of the

joint obligors has paid the debt of his principals and brings an action against them alleging in his complaint that he in writing guarantied the payment of the note, the admission in evidence of the joint guaranty does not constitute a variance, as his right of subrogation does not depend upon the joint or several character of his obligation, but upon the fact that he was bound by the guaranty and paid the debt of his principals.

SAME—VARIATION OF WRITTEN INSTRUMENT BY PAROL..

Evidence that the indebtedness of defendant to a bank, secured by a pledge of mining stock, had no connection with his indebtedness upon a note and mortgage, which had been assigned to the bank as collateral by third parties, is not objectionable on the ground that it tends to vary the terms of a written contract made between defendant and another, which provided that the latter should pay all claims held by the bank against defendant, for which it held certain securities, including mining stock, and should take up all stock and other collaterals held by the bank as security.

Appeal from Superior Court, King County. — Hon. E. D. Benson, Judge. Affirmed.

*Ballinger, Ronald & Battle,* for appellants:

The allegation of this complaint is that " plaintiff in writing guaranteed the payment of the note." The proof offered shows a joint guaranty by plaintiff and others. This is a total failure of proof. *Rose v. Feldman,* 67 Cal. 100; *Cotes v. Campbell,* 3 Cal. 191; *Morrison v. Corporation,* 5 Cal. 503; *Christian College v. Hendley,* 49 Cal. 347; *Farmer v. Cram,* 7 Cal. 135; *Graves v. Boston Marine Ins. Co.,* 2 Cranch, 419 (2 L. ed. 324); *Kerron v. North Pacific L. & M. Co.,* 1 Wash. 241; *Silsby v. Aldridge,* 1 Wash. 117; *Smith v. McGregor,* 96 N. C. 101 (2 S. E. 695); *Pendleton v. Dalton,* 96 N. C. 507 (2 S. E. 759); *Cowles v. Warner,* 22 Minn. 449.

The erasure of the name of one of the joint guarantors after signing shows on the face of the instrument an intention to release such joint guarantor after he had once been bound, and such release *per se* releases all the joint

guarantors, renders the instrument void, and the plaintiff herein was not under any legal liability to pay the note and mortgage; his payment was the act of a volunteer, and an extinguishment of the lien. *Stockton v. Stockton,* 40 Ind. 227; *State v. Craig,* 58 Iowa, 238; *McCramer v. Thompson,* 21 Iowa, 244; *Hall v. McHenry,* 19 Iowa, 521 (87 Am. Dec. 451); *State ex rel. Griswold v. Blair,* 32 Ind. 313; *Curry v. Bank of Mobile,* 8 Port. (Ala.) 360; *Potter v. Gronbeck,* 17 Ill. App. 251; *Smith v. United States,* 2 Wall. 219 (17 L. ed. 788); *Martin v. Thomas,* 24 How. 315 (16 L. ed. 689); *Atlanta National Bank v. Douglass,* 51 Ga. 205 (21 Am. Rep. 234); *Chappell v. Spencer,* 23 Barb. 585; *Owens v. Tague,* 29 N. E. 784.

A surety who satisfies the debt of the principal after he has been released by operation of law or otherwise, or when there was a legal defense, occupies no better attitude than that of any other person paying the debt of another without request or authority, implied or expressed. He is a mere stranger or volunteer, and cannot be subrogated to the rights of the creditor, and it is not material whether the vendee of the land sought to be subjected has been benefited or not. There must be a legal liability to pay, before he can be subrogated, and the complaint should show this legal liability. *Dawson v. Lee,* 83 Ky. 49; *Kimble v. Cummins,* 3 Metc. (Ky.) 327; *Suppiger v. Garrels,* 20 Ill. App. 625; *Fink v. Mahaffy,* 8 Watts, 384; *Bank of Pennsylvania v. Potius,* 10 Watts, 148; *Bancroft v. Abbott,* 3 Allen, 524; *Binford v. Adams,* 104 Ind. 41 (3 N. E. 753); *Randolph v. Randolph,* 3 Rand. (Va.) 490; *Hatchett v. Pegram,* 21 La. An. 722; *Sanford v. McLean,* 23 Am. Dec. 773; *Aetna Life Ins. Co. v. Middleport,* 124 U. S. 534 (31 L. ed. 537).

*Bausman, Kelleher & Emory,* for respondent:

A surety, who may have a technical defense when the principal himself has none, does not become a volunteer

by waiving it and paying the obligation in order to protect both his own credit and that of the principal who got him into the transaction. *Slack v. Kirk,* 67 Pa. St. 380 (5 Am. Rep. 438); *Dow v. Nason.* 38 Pac. 54; *Curry v. Curry,* 87 Ky. 667 (12 Am. St. Rep. 504); *Capehart v. Mhoon,* 5 Jones Eq. (N. C.) 178; Harris, Subrogation, § 801.

The opinion of the court was delivered by

ANDERS, J.—On May 1, 1891, the defendants, Henry Bash and Susan W. Bash, executed a promissory note for $1,225, payable to the order of defendants A. W. and Flora S. Bash ninety days after date, with interest from date until paid at the rate of one per cent. per month. To secure the payment of said note the makers thereof, on said May 1, 1891, executed and delivered to the payees therein named a mortgage on lots numbered 8 and 9, in block 3, in the Highland Addition to the city of Seattle. Thereafter the said A. W. and Flora S. Bash assigned the note and mortgage to the Washington National Bank of Seattle. On June 29, 1892, the plaintiff, Blewett, and others guaranteed the payment of this note on or before October 27, 1892, to which last mentioned date the time of payment of the note was extended by the bank. After the note became due, and on December 20, 1892, the plaintiff, Blewett, paid the principal and interest then due on the note, and received both the note and mortgage, uncanceled, from the bank. On March 21, 1893, the makers of said note and mortgage sold and conveyed by deed duly signed, witnessed, and acknowledged, the premises described in the mortgage of May 1, 1891, to the defendant Charles Bruhn; and in said deed they covenanted that the property therein described was free from all liens and incumbrances, save a certain mortgage, which they agreed to pay off and satisfy. Prior to the time this deed

was executed and delivered, the mortgage had been duly recorded in the office of the county auditor of King county. The plaintiff instituted this action to foreclose this mortgage by right of subrogation. The complaint alleges, among other things, the making of the note and mortgage by Henry and Susan W. Bash; that on or about June 29, 1892, the plaintiff, in writing, guaranteed the payment of the note, at the special instance and request of defendants Bash, and subsequently, on the failure of the defendants Bash to pay it, did himself discharge the obligation; and that, upon the indorsement and delivery of the note to the Washington National Bank, the indorsers (payees), defendants Albert W. Bash and Flora S. Bash, assigned and transferred with it, as collateral, the mortgage therein set forth. The defendants Bash and the defendants Bruhn answered separately, the former admitting the execution of the note and mortgage set forth in the complaint, the assignment to the Washington National Bank, and the guaranty of the payment of the note by plaintiff, but denying that the note was not paid by them, and alleging affirmatively that the plaintiff, by their direction and with funds and moneys furnished by them to him for that purpose, paid to the Washington National Bank, the then owner and holder of said note, the full amount of the same, together with interest thereon to the date of payment, and then and there discharged the said note and mortgage, together with the obligation to pay therein contained; and that the plaintiff has, ever since the payment of the note and mortgage and the receipt and acceptance of the same from said bank, wrongfully held said note and mortgage, and now wrongfully holds the same, as a pretended claim and demand against the defendants Bash, and has failed, neglected, and refused to surrender the said promissory note or to cancel the said mortgage, although the defendants Bash have heretofore duly demanded the surrender

of the note and the cancellation of said mortgage. The defendants, Charles and Pauline Bruhn, in their answer deny the material averments of the complaint, except the making of the note by the defendants Henry and Susan Bash, and allege affirmatively that the note had been fully paid and discharged. The affirmative matter set forth in each of these answers was denied in plaintiff's reply. A trial was had by the court, which resulted in a judgment and decree foreclosing the said mortgage and ordering the premises therein described to be sold to satisfy the mortgage indebtedness, together with certain taxes admitted to have been paid by the plaintiff. The defendants Bash introduced no evidence at the trial, and the defendants Bruhn alone have appealed.

It is claimed by the appellants that the trial court erred in admitting the mortgage in evidence, for the alleged reason that there was no proof of its execution. It appears that at the time when it was proposed to offer the mortgage in evidence, something was said about introducing a certified copy, which it was understood would be presumptive evidence of execution; and it appears from the record that the appellants waived the production of the certified copy, and the respondent thereupon introduced the original instrument. The objection made to its introduction was that it was incompetent and immaterial. No suggestion seems to have been made to the court that the execution of the deed had not been proved, and, if such objection had been made, it would have been unavailable, for the reason that, under our statute as construed by this court in *Gardner v. Port Blakely Mill Co.,* 8 Wash. 1 (35 Pac. 402), the deed, with the certificate of acknowledgment in due form by the notary public, constituted *prima facie* proof of execution.

It is further claimed by appellants that the court erred in admitting in evidence, or considering, the guaranty of

the payment of the note, over the objection that it appeared upon the face of the instrument that it was not in the same condition in which it was at the time of its execution, and that it showed on its face that it was a joint, and not a joint and several, guaranty.  The first name in the list of signatures to this guaranty, that of J. Loring Whittington, appears to have been erased, but when, or by whom, or by whose direction, does not appear from the record.  The next name in the order of signing is that of the respondent, and after that appears the firm name of Metcalfe, Little & Jurey.  This court has adopted the rule that interlineations and erasures in written instruments will be presumed, in the absence of evidence to the contrary, to have been made before execution.  *Kleeb v. Bard,* 12 Wash. 140 (40 Pac. 733).

The learned counsel for the appellants concede this to be the settled law of this state, but they insist that the rule is not applicable here, for the reason that, in the very nature of things, the erasure of a signature must follow execution.  This is, no doubt, true as to the person whose name is erased; but it does not necessarily follow, as claimed by the appellants, that the release of one of several joint obligors releases all the others.  In the first place, it may be well to observe that no release was pleaded in this case; and, in the second place, neither of the other parties who signed the instrument is claiming to be released from the obligation thereof.  On the contrary, the respondent is claiming and insisting that he paid the note by reason of his guaranty to pay, and that he is entitled to be subrogated to the rights, remedies, and security possessed and held by the Washington National Bank, at the time of payment.  The release of one of several joint guarantors or sureties will not effect a discharge of the others, unless the release of the one is granted without the

consent or acquiescence of such others; and, for aught that appears in the record, the name of Whittington may have been erased from the guaranty either before the other guarantors signed it, or afterwards, but with their knowledge and approval.    There being nothing in the record to show that the respondent was released from his obligation as guarantor, the contention of the appellants that, if he did pay the note with his own money, he was under no legal obligation to pay it, and was therefore a mere volunteer and hence not entitled to recover the amount so paid, cannot be sustained.    Nor was it error on the part of the court to admit the guaranty in evidence without previous explanation as to the apparent erasure.    See *Fairhaven v. Cowgill,* 8 Wash. 686 (36 Pac. 1093).

If this were a direct action on the guaranty, the appellants' contention that, being joint and not joint and several, it was inadmissible under the allegation of the complaint that the plaintiff in writing guaranteed the payment of the note, would not be without merit.    But the right of subrogation claimed by the respondent does not depend upon the question whether he was or was not a several guarantor, but upon the fact that he was bound by the guaranty and paid the debt of his principals.    It must be borne in mind that the complaint in this case, as we have seen, also alleges, in effect, that the plaintiff (respondent), *as guarantor,* paid the amount due on the note to the Washington National Bank, the then owner and holder of the note and mortgage.    If, however, there was in fact a variance between the allegations and the proof in this particular, it was not fatal to the cause of action; and, under our statute providing that this court shall consider all amendments as made which might have been made in the court below, it would be our duty to consider the complaint as amended to conform to the proof, rather than to reverse the judgment on account of the variance.    It is

a well settled principle that a surety or guarantor who pays
the debt of his principal will be substituted in the place of
the creditor of such principal, as to all securities for the
debt held by the creditor, and will be entitled to the same
benefit from them as the creditor himself might have had.
2 Brandt, Suretyship & Guaranty (2d ed.) §§ 298, 301,
315.   See, also, Sheldon, Subrogation (2d ed.) §§ 2, 3.

At the trial the appellants, in order to prove payment
of the note and mortgage by the defendants Bash, intro-
duced in evidence, over the objection of the respondent,
an alleged copy of a contract entered into between one
Hammond and defendant Henry Bash, dated June 17,
1892, whereby the latter, among other things, authorized
the former to pay all claims against him, the said Bash,
then held by the Washington National Bank of Seattle,
for which they then held certain securities, among which
were $75,000 of stock of the Culver Gold-Mining Com-
pany, and wherein and whereby the said Hammond agreed
to tender within a reasonable time to the Washington Na-
tional Bank, for the said Bash, all sums due from him to
the Washington National Bank, amounting to $6,869.30,
with interest from May 17, 1892, and to take up all stock
and other collaterals held by said Washington National
Bank as security, provided the said Washington National
Bank would accept the same and deliver to said Hammond
the said stock and other collateral securities so held by it
as security; and it was agreed in said contract that all
such stock and other collaterals taken up should be held
by the said Hammond as security for the payment of all
sums advanced by him according to the provisions of the
agreement.   The party representing said Hammond in this
alleged agreement was called as a witness by the appel-
lants.   He, however, denied having signed any such agree-
ment as set forth in the alleged copy, but admitted that he
agreed with Mr. Bash to take up the mining stock owned

by the latter and in possession of the bank, and to pay the amount for which it was pledged, and that he did so. And he further testified, in substance, that he had no knowledge of the note and mortgage in controversy until the time at which he tendered to the bank the amount for which the stock was pledged as collateral security; and that the contract which he made in reference to redeeming the stock had no connection whatever with the note and mortgage now under consideration. The president of the Washington National Bank was called as a witness for plaintiff, and he also testified that the bank received from the representative of Hammond (one Ammidon) only the amount that was secured by the mining stock, and that the note in controversy was paid by the respondent, and that the indebtedness of Mr. Bash against the mining stock had no connection at all with the mortgage indebtedness. The latter testimony was objected to by counsel for appellants, on the ground that it tended to change or vary the terms of this written contract. But we see no merit in such objection. As we have already stated, the same testimony was given by the witness called on behalf of the appellants.

We perceive no error in the record, and the judgment of the court below is therefore affirmed.

DUNBAR, C. J., and REAVIS, J., concur.