[No. 11370. Department Two. February 6, 1914.]

E. D. PEASE, *Respondent*, v. J. W. SYLER, *Appellant*.[1]

BILLS AND NOTES—RIGHTS OF ACCOMMODATION MAKER—ATTORNEY'S FEES—SUBROGATION. A co-maker of a joint and several note who signed for accommodation and was only secondarily liable thereon, upon being compelled to pay the note, is subrogated to the rights of the creditor, and entitled to recover, as owner and holder of the note, the stipulated attorney's fee in an action thereon against the principal maker; especially in view of Rem. & Bal. Code, § 3509, providing in what manner a negotiable instrument is discharged, and § 3511, providing that it is not discharged when paid by the party secondarily liable thereon, who may thereupon strike subsequent indorsements and negotiate it.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered February 15, 1913, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

[1]Reported in 138 Pac. 310.

*Berkey & Cowan,* for appellant.

*Freece & Pettijohn,* for respondent.

PARKER, J.—The plaintiff seeks to recover from the defendant upon a promissory note which was executed by both of them, the plaintiff claiming that he executed the note only as an accommodation maker for the appellant and that he was compelled to pay the whole of the principal thereof, with interest, to the payee after maturity, because of the default of the defendant. A trial before the court without a jury resulted in findings and judgment in favor of the plaintiff for the full amount of the principal with interest, including an attorney's fee, as provided in the note, evidently upon the theory that the plaintiff was entitled to all the rights which the payee would have in suing upon the note himself. From this disposition of the cause, the defendant has appealed, making his only contention here that the trial court erred in including an attorney's fee, other than the statutory fee, in the judgment.

The cause comes here without any bill of exceptions or statement of facts, so we treat the facts as found to be undisputed. The facts found are in the language of respondent's complaint, which, so far as we need here notice its allegations, reads as follows:

"Comes now the plaintiff, and for a cause of action against the defendant, alleges:

"(1) That on the 8th day of June, 1910 at Davenport Lincoln county, state of Washington, the plaintiff and the defendant made the promissory note of which the following is a copy, to wit:

No.                    Davenport, Wash., June 8, 1910      $500.00

On the 8 day of Nov. 1910 after date, without grace, for value received, I promise to pay to the order of Lincoln County State Bank, Davenport, Wash., Five Hundred Dollars in U. S. Gold Coin, at the present standard value, with interest from date until paid, at the rate of 10 per cent per annum; and in case suit or action is instituted to collect this note or any portion thereof I promise and

agree to pay in addition to the costs and disbursements provided by statute, a reasonable amount in like gold coin for Attorney's Fees in said suit or action.                              J. W. Syler

E. D. Pease

"(2)    That the plaintiff never received any consideration whatsoever therefor; but that it was an accommodation note, made, and given to the defendant at his request, and upon his promise that he would pay it at maturity.

"(3)    That the defendant thereafter and before its maturity negotiated the said note and for a valuable consideration delivered it to the Lincoln County State Bank which became the owner and holder thereof.

"(4)    That the defendant failed to pay the same at its maturity or at all, and the said Lincoln County State Bank thereupon made due demand upon this plaintiff for payment and the plaintiff paid said note in the sum of Five Hundred two and 90-100 ($502.90) that being the principal and accrued interest thereon, on the 23d day of November, 1912.

"(5)    That the defendant has not repaid to plaintiff the said sum of five hundred two and 90-100 ($502.90) dollars, nor any part or portion thereof, and there is now due, owing and unpaid to plaintiff, from said defendant, the sum of five hundred two and 90-100 ($502.90) dollars.

"(6)    That upon the payment of the said note by plaintiff as hereinbefore alleged, the said Lincoln County State Bank delivered said note to plaintiff and the plaintiff is now the owner and holder thereof and entitled to maintain this action.

"(7)    That one hundred dollars is a reasonable sum to be allowed to plaintiff as attorneys fees herein as is provided for in said promissory note."

We note that this is the language of the complaint as well as the findings, so as to make it plain that respondent is resting his right to recover upon his ownership of the note as against appellant.

The main question in the case is, May respondent maintain an action upon the note against appellant, his co-maker, and recover the attorney's fee provided in the note as the original payee would be entitled to do? It is plain under these findings that the words "I promise to pay," in the

note, constitute it a joint and several obligation (Rem. & Bal. Code, § 3408, subd. 7) and that respondent, as between him and appellant, was nothing more than an accommodation maker, rendering him only secondarily liable. The contentions made on behalf of appellant are rested largely upon the decision of this court in *Austin v. Hamilton*, 7 Wash. 382, 34 Pac. 1097. The only light that decision throws upon the problem here involved must be gathered from the portion thereof reading as follows:

"This action was brought by the plaintiff to recover of the defendants moneys which it was alleged he as guarantor of a certain note of the defendants had been compelled to pay for and on their behalf. . . . The court in entering judgment included as a part thereof fifty dollars as an attorney's fee, that being the amount stipulated in the note to be paid by the makers in case action was brought thereon. In so doing the court committed an error. The action was not upon the note as such, but was to recover money paid out by the plaintiff for the use and benefit of the defendants."

No other discussion of the question is found in that decision, nor is there a single authority cited therein. The controlling fact there seemed to be that "the action was not upon the note as such." The only other authorities called to our attention by counsel for appellant are: *Yule v. Bishop*, 133 Cal. 574, 65 Pac. 1094; *Lowenthal v. Coonan*, 135 Cal. 381, 67 Pac. 324, 1033, 68 Pac. 303, 87 Am. St. 115; and *Crystal v. Hutton*, 1 Cal. App. 251, 81 Pac. 1115. These California decisions, however, seem to rest largely upon a statute of that state reading as follows:

"Full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf, and with his assent, if accepted by the creditor, extinguishes it."

This quotation is from 1 Cal. App. p. 253. Our attention has not been called to any such statutory provisions in this state. We think there are none, but that we have other stat-

utory provisions which negative any such rule. We pass that, however, for the moment, to notice authorities which we think show the justice of the contrary rule. In the early case of *Lidderdale v. Robinson*, 2 Brock. 159, Chief Justice Marshall, while sitting in the United States circuit court in Virginia, dealing with the contribution rights of a surety as against the estate of his deceased co-surety, having paid more than his proportion of the obligation, which obligation apparently was a preferred one in favor of the principal creditor, observed:

"The principle that a person who has paid money as surety, or on account of another, shall be substituted in the place of the creditor, seems to be familiar in England. In 3 P. Wms. 400, it is laid down by the chancellor, that an executor who has paid beyond the assets which have come to his hands, shall rank as the creditor whose debt he has paid; and in 1 Atk. 134, (5) the chancellor says: 'Indeed, where there is a principal and surety, and the surety pays off the debt, he is entitled to have an assignment of the security in order to enable him to obtain satisfaction for what he has paid over and above his own share.' The principle is also laid down in 2 Ves., Sen., 302, (6) and 11 Ves., Jr., 22 (7). Indeed it seems to be too well settled to be controverted, and we find it generally laid down as an acknowledged rule rather than decided in a contested case. But it has been supposed that, though this rule must be admitted as applicable to cases between a surety and his principal, it will not apply between co-sureties. I can perceive no reason for this distinction. The principle which the cases decide is this: Where a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged. This principle of substitution is completely established in the books, and being established, it must apply to all persons who are parties to the security, so far as is equitable. The cases suppose the surety to stand in the

place of the creditor, as completely as if the instrument had been transferred to him, or to a trustee for his use."

This case was thereafter reviewed in the supreme court of the United States, *Id.*, 12 Wheat. 594, where Justice Johnson, speaking for the court, observed:

"The priority, therefore, of the holder of the bill of exchange, as well against the estates of the endorsers, as the drawer, is unquestionable; but, the other creditors insist, that as between the co-endorsers, the rights of Smith against the estate of Robinson, must be determined by the nature of the action to which he would have been put at law to recover back what he paid above his moiety, that is, *assumpsit* on simple contract. But both on principle and authority we are induced to think otherwise. What have the creditors of Robinson to complain of? They are only referred back to the situation in which they were before they were relieved by the application of Smith's funds to the payment of the bill of exchange. If the bill of exchange still remained in the hands of the holder unsatisfied, his right to a priority from Robinson's estate as to the moiety of the bill, would be unquestionable, and if relieved from that state by the money of Smith, it is but right that Smith should have refunded to him that sum which they, without that payment, would certainly have been obliged to relinquish."

In *Beville v. Boyd*, 16 Tex. Civ. App. 491, 41 S. W. 670, 42 S. W. 318, Justice Stevens, speaking for the court, said:

"Equality is equity; and where no primary obligation rests upon any particular co-maker of a written instrument, one such co-maker who pays more than his share can only ask for contribution, and subrogation goes no further than is necessary to reimburse him for the overpayment. But where one stands as mere ·surety for another, it does not lie in the mouth of the principal debtor, for whose accommodation he has become bound, to deny him any of the rights which the contract gave the common creditor, when he is forced to become the creditor himself by the failure of his principal to discharge the duty of payment resting primarily on such principal. This would not be equality and not equity. Of course equity would not allow the surety to

speculate off his principal by taking up the note at a discount and then recover the full amount."

Upon this principle, an attorney's fee specified in the note was allowed to the surety as if the suit had been by the original maker. *Hayes v. Ward*, 4 Johns Ch. 123, 8 Am. Dec. 554; *Mason v. Pierron*, 63 Wis. 239, 23 N. W. 119; *Ferd Heim Brewing Co. v. Jordan*, 110 Mo. App. 286, 85 S. W. 927; *Frank v. Traylor*, 130 Ind. 145, 29 N. E. 486, 16 L. R. A. 115; *Marsters v. Umpqua Oil Co.*, 49 Ore. 374, 90 Pac. 151, 12 L. R. A. (N. S.) 825; *Sublett v. McKinney*, 19 Tex. 438.

The views expressed by this court in the later case of *Blewett v. Bash*, 22 Wash. 536, 61 Pac. 770, are in harmony with these holdings, where it is said:

"It is a well settled principle that a surety or guarantor who pays the debt of his principal will be substituted in the place of the creditor of such principal, as to all securities for the debt held by the creditor, and will be entitled to the same benefit from them as the creditor himself might have had."

We notice the views expressed in these various decisions more for the purpose of showing the manifest justice of the rule here contended for by respondent than for the purpose of resting our decision in this case entirely upon such holdings. We do not lose sight of the fact that there are decisions to the contrary.

The apparent justice of the conclusions announced in the decisions we have noticed, we are led to believe, prompted the legislatures of many of the states, including our own, to enact into the negotiable instruments law the following:

"A negotiable instrument is discharged—

"(1) By payment in due course by or on behalf of the principal debtor;

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"(3)  By the intentional cancellation thereof by the holder;

"(4)  By any other act which will discharge a simple contract for the payment of money;

"(5)  When the principal debtor becomes the holder of the instrument at or after maturity in his own right."  Rem. & Bal. Code, § 3509 (P. C. 357 § 237).

The court of appeals of Maryland, dealing with the negotiable instruments law of that state in the exact language of ours above quoted, in the case of *Vanderford v. Farmers' & Mechanics' Nat. Bank*, 105 Md. 164, 66 Atl. 47, 10 L. R. A. (N. S.) 129, said:

"When the legislature has declared, as it has done in those sections, that a negotiable instrument signed by a party who is primarily liable thereon, as that liability is defined by the act, may be discharged in one of five specified methods, it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other, or different method, upon the familiar maxim that the express mention of one thing implies the exclusion of another."

It is true, in that case there was involved the question of the release of an original maker, though surety as between him and his co-maker, known to be such by the payee, by the principal maker granting an extension of time of payment. We are unable, however, to see that the remarks of the court there made are not equally applicable to the claimed discharge or "extinguishing"—to use the California expression—of the note by any method other than one of the five methods specified in the statute.  We agree with the Maryland court that, as to the principal debtor, the note cannot be discharged or extinguished as such except in one of the five methods enumerated in the statute.  But, our statute seems to go even farther than this as to the effect of payment by a party secondarily liable.  Turning to § 3511, Rem. & Bal. Code (P. C. 357 § 241), we read:

"Where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying

it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements, and again negotiate the instrument, except—

"1.    Where it is payable to the order of a third person, and has been paid by the drawer; and

"2.    Where it was made or accepted for accommodation, and has been paid by the party accommodated."

*Korkemas v. Macksoud,* 131 App. Div. 728, 116 N. Y. Supp. 85; and Brannan's Negotiable Instruments Law, pp. 116-122, support our conclusion that, in the light of these statutes, respondent possessed all the rights of the original payee of the note, and was entitled to judgment accordingly. We are of the opinion that the judgment must be affirmed.

It is so ordered.

Crow, C. J., Fullerton, Morris, and Mount, JJ., concur.