[No. 31287. *En Banc.* July 19, 1950.]

EDMUND V. TWOHY, *as Executor, et al., Respondents,* v. SLATE CREEK MINING COMPANY, *Appellant.*[1]

*Henderson, Carnahan & Thompson, Henry C. Perkins, Rummens, Griffin & Short* and *Paul R. Cressman,* for appellant.

*John J. Kennett,* for respondents.

[1]Reported in 220 P. (2d) 1075.

HILL, J.—We are here concerned with the question of whether the evidence supports a judgment for the respondents in the amount of twelve thousand five hundred dollars for attorneys' fees.

The respondents had previously been before this court contending that, by the terms of an express contract, they were entitled to 125,000 shares of stock of the appellant, Slate Creek Mining Company, for legal services rendered to that company subsequent to November 5, 1940, by Edmund Paul Twohy, now deceased, and Frank Funkhouser. (They had each received 10,000 shares of stock for organizing the corporation and for other services rendered prior to November 5, 1940.) This court held, in *Twohy v. Slate Creek Mining Co.*, 31 Wn. (2d) 668, 198 P. (2d) 832, that no express contract had been established but that the firm of Funkhouser and Twohy was entitled to recover the reasonable value of the services rendered; and the cause was remanded to the trial court with directions

" . . . to render judgment in favor of respondents, and against appellant, Slate Creek Mining Company, in such amount as it finds due. If it becomes necessary for the trial court to take additional testimony to ascertain the reasonable value of such services, it is authorized to do so."

The appellant seeks to raise numerous questions, all predicated upon its assumption that the matter was sent back for a new trial on the issue of the amount of compensation due the respondents, and that the appellant was therefore entitled: (1) to have the pleadings recast on the basis of an action for compensation; (2) to plead the statute of limitations; (3) to have a trial by jury; (4) to have the whole issue of the extent, character and value of respondents' services retried, the obligation being upon the respondents to establish a *prima facie* case; and (5) to have the trial court make findings of fact.

However, we did not send the case back for a new trial on any issue. It is clear from our opinion in *Twohy v. Slate Creek Mining Co., supra*, that we were trying to avoid the expense and time involved in another trial where the right to some relief seemed apparent on the evidence already

before the court. While it was contemplated that the trial court might determine the reasonable value of the services rendered by the respondents on the evidence already before it, we left the door open for it to take additional testimony if it desired to do so.

■ We recognize that when a party seeks equitable relief but fails to establish the facts essential to give equity jurisdiction of the controversy (as where he fails to establish the existence of a contract which he seeks to have specifically enforced) the prevailing view is that the court may not award damages; and that if the rule were otherwise a litigant, by a pretended claim of equitable relief, might deprive his opponent of advantages incident to an action at law—for example, the constitutional right of trial by jury. 19 Am. Jur. 133, Equity, § 132. The case presented to us on the former hearing seemed to come within the rule that:

"If one sues in equity in good faith and fails to establish his cause, but shows a state of facts entitling him to recover at law, the court, having rightfully obtained jurisdiction for a proper purpose, may retain the cause and grant just such relief as, on the facts, the complainant appears to be entitled to, whether at law or in equity." 19 Am. Jur. 133, Equity, § 133.

If appellant deemed our disposition of the case erroneous and believed that it would thereby be deprived of any or all of the five things to which it now claims to be entitled, it should have brought the effect of our decision to our attention by a petition for rehearing. We certainly cannot now reverse a trial court because it did exactly what we directed it to do and what we intended that it should do.

■ We cannot, however, find evidence that would support a judgment of twelve thousand five hundred dollars for the services performed for the appellant by the firm of Funkhouser and Twohy. That figure seems to be no more than a reach into the "wild blue yonder," unless the trial court was attempting to preserve for the respondents the benefits of the contract which we had held they had not proved, by putting a value of ten cents a share on the 125,-000 shares of stock for which they had sued.

There is available no detailed record of the various items of service rendered. At the trial the respondents offered what we gather from the record to be such a detailed statement, their counsel stating:

"Here is a list of it, appearing in these various matters, detailing each particular matter and what the matter was. I think that should go in. Mr. Funkhouser took this from their files."

But the trial judge, having in mind that the respondents' claim did not rest upon the value or extent of the services but upon an alleged contract for 125,000 shares of stock, commented, "What difference does that make here?" The offered document was excluded by the trial judge with the statement, "Nothing should go in unless it is relevant, competent and material."

That ruling was correct on the issue then being tried, i. e., Did the firm of Funkhouser and Twohy have a specific contract for 125,000 shares of common stock as a fee for legal services?

When this court held that such a contract had not been established and sent the case back for the purpose of having the trial court fix an attorneys' fee on the basis of the reasonable value of the services rendered, we left the door open for evidence as to the character, extent and value of those services; but the respondents saw no need for additional evidence and the appellant refused to introduce any. Taking the record as we find it, we have the following matters handled by the firm of Funkhouser and Twohy for the appellant (including services by Mr. Funkhouser after Mr. Twohy's death in November, 1944):

A. *McLennan litigation in Whatcom county.*

In August of 1941 Mr. Funkhouser went to Bellingham and made an investigation, at the request of appellant company, because its check in payment of taxes on its mining properties in Whatcom county had been returned by the county treasurer with the statement that the taxes had already been paid by Margaret C. McLennan.

In September of 1941, M. C. McLennan, as owner and assignee of certain defaulted bonds issued by the New Light

Gold Mining Company (from which corporation a major portion of the property to be developed and operated by the appellant had been leased), commenced an action to recover a judgment for $21,500 on the bonds so held by her, and to enforce the same against the property covered by a mortgage given to secure payment of the bonds.

In a letter of October 8, 1941, Mr. Twohy stated that a thorough search of the authorities had been made, "particularly with reference to the right of McLennan to sue in her individual capacity," and that a brief had been written. He urged that the demurrer be "seriously argued." Mr. Twohy went to Bellingham and argued the demurrer, and it was sustained. Plaintiff McLennan appealed to this court.

Mr. Twohy expressed the opinion in a letter written in April, 1942, "that this appeal was prematurely taken and that the case will be dismissed without going into the merits." However, he recommended that a brief on the merits be prepared, for, as he sagely suggested, "you never can tell what a court will do." The brief was prepared, but it is not in evidence, so there is no way (except by going outside the record) to determine the difficulties inherent in the legal problems presented or the amount of research required in its preparation. Of one thing we are reasonably certain, and that is that it was not an extensive brief, as the printing cost was only $35.33. Mr. Twohy argued the case in this court in May of 1942. Mr. Funkhouser testified in the present case that the appeal was subsequently dismissed.

In the fall of 1942, M. C. McLennan made a procedural move of some sort in an effort to get a new complaint filed, and Mr. Twohy went to Bellingham a second time, and again argued a demurrer. In December of 1942 he wrote a letter in which he stated that he had received a letter from the judge at Bellingham "in which he sustains our demurrer," and added, "You understand the legal effect of that is to knock out the plaintiff's case."

This litigation involved two trips to Bellingham by Mr. Twohy to argue demurrers and one trip to Olympia to argue the appeal on its merits and his motion to dismiss. Mr.

Funkhouser made an exploratory trip to Bellingham in August, 1941, and again in November, 1944, to obtain entry of an order of dismissal for want of prosecution.

It is true, as urged by respondents, that had McLennan prevailed in her action the appellant would have lost its most valuable properties; but the seriousness of the threat is not apparent, and it seems to have been fairly easily disposed of.

B. *McLennan litigation in King county.*

M. C. McLennan commenced an action in King county in August, 1941 (antedating the Whatcom county suit, A, *supra*), attacking the validity of the lease from the New Light Gold Mining Company to appellant but asking judgment for taxes she had paid on the property covered by that lease and for royalties on the minerals removed. A writ of garnishment was issued, directed to the Tacoma Smelter and Refining Company. Mr. Funkhouser went to Tacoma in connection with the garnishment referred to.

This case was never tried and was dismissed in November, 1944, for want of prosecution. On dismissal, Funkhouser and Twohy received $130.54 from the King county clerk, being the amount paid in to court by the garnishee defendant, less its costs.

C. *Lutz and Heirich litigation in King county.*

John E. Lutz and Bruneau E. Heirich served a complaint, verified in November, 1941, on the appellant, alleging that they were entitled to a half interest in certain of appellant's mining properties. A demurrer was prepared by Funkhouser and Twohy. So far as the record indicates, the complaint was never filed and no services were rendered by Funkhouser and Twohy beyond the preparation of the demurrer.

D. *Appellant's suit in Chelan county.*

By a complaint verified in November, 1941, and served in January, 1942, appellant claimed damages of fifty thousand dollars against the Miners' & Merchants' Bank of Chelan, together with its vice-president and M. C. McLennan (the plaintiff in items A and B, *supra*), alleging a conspiracy to

harass appellant and to cause the loss of its property. The complaint was prepared by Funkhouser and Twohy, but there is nothing in the record to indicate that it was ever filed, and there is no reference to subsequent proceedings, if any.

E. *Capital stock tax difficulties.*

The United States treasury department, claiming unpaid capital stock taxes aggregating slightly over eighteen hundred dollars against two of the companies from which the appellant had acquired certain of its mining properties, stopped operations at appellant's mine and was about to sell certain personal property on distraint, but, thanks to the good offices of Funkhouser and Twohy, appellant was given permission to resume operations within four or five days. Whether the appellant ultimately paid those taxes or the matter was disposed of in some other way, does not appear from the record.

In connection with this matter, Mr. Funkhouser made two calls at the internal revenue office in Tacoma and also went to Olympia. (Mr. Funkhouser went from Spokane to Seattle and spent Thursday, Friday and Saturday in late August, 1941, on appellant's business. This includes the two visits to the internal revenue office and the trip to Olympia just referred to, the trip to Tacoma in connection with item B, and the first trip to Bellingham referred to in item A.) Mr. Twohy and Mr. Funkhouser also made a trip to Winthrop, Washington, at the time of the threatened sale of the personal property.

F. *Miscellaneous.*

(1) Mr. Funkhouser made two trips to the mine in the spring and summer of 1941, "to see about the road work and what was going on."

(2) In November, 1942, there was correspondence relative to Mr. Twohy's bringing a Mr. Harris to Seattle to meet with the appellant's directors, but the last reference in the record to such a meeting is a telegram postponing it.

(3) On May 31, 1944, appellant's president was in Spokane and conferred with both Mr. Twohy and Mr. Funk-

houser. They discussed the advisability of paying five hundred dollars for an assignment of a claim on 350,000 shares of the New Light Gold Mining Company stock. (It was at this meeting that respondents claimed an agreement was made whereby the firm of Funkhouser and Twohy was to receive 125,000 shares of stock as attorneys' fees.)

(4) On March 15, 1945, the state department of conservation and development sent a form notice to the appellant to the effect that the department had received no notice of completion of construction under a permit which had expired January 1, 1943, and that the appellant should send in either a notice of completion or a request for an extension of time. Mr. Funkhouser secured an extension of time under the permit to July 1, 1947.

(5) In August, 1946, work on the necessary applications for Federal and state permission to sell some preferred stock was just getting under way when the lawyer-client relationship between Mr. Funkhouser and the appellant terminated.

The books of Funkhouser and Twohy show disbursements of $60.78 in connection with items A, B and D, and $487.39 received from the appellant. It was testified that the difference between these two amounts was for traveling and other out-of-pocket expenses, which expenses Mr. Funkhouser testified exceeded that amount.

We have carefully appraised the extent and character of the services rendered appellant by the firm of Funkhouser and Twohy as shown by the record (including those rendered by Mr. Funkhouser after the death of Mr. Twohy), together with the importance of the matters involved and the known ability of Mr. Twohy and Mr. Funkhouser in their respective fields. The members of this court were and are in disagreement as to whether respondents proved a specific contract for 125,000 shares of stock for the services rendered by the firm of Funkhouser and Twohy, but we are in complete accord on the proposition that the reasonable value of their services did not exceed five thousand dollars.

Judgment for the respondents against the appellant will be reduced to five thousand dollars. The appellant will recover its costs on this appeal.

ALL CONCUR.