[No. 11832-3-I.   Division One.   December 31, 1984.]

L. B. FRANCO, ET AL, *Appellants,* v. PEOPLES NATIONAL BANK OF WASHINGTON, *Defendant,* JOHN ANDERSON, ET AL, *Appellants,* BJARNE KRISTIANSEN, ET AL, *Respondents.*

*Watson, Grosse & Feinstein, Patricia A. McCarthy,* and *C. Kenneth Grosse,* for appellants.

*Moren, Lageschulte & Cornell, Paul S. McConnell,* and *Roger Lageschulte,* for respondents Kristiansen, et al.

*Langlie & Praeger* and *John R. Praeger,* for respondents Leamer, et al.

SWANSON, J.—The Francos and the Andersons appeal the dismissal of their lawsuit in which they sought contribution or exoneration from the Leamers and the Kristiansens, coguarantors of a corporate debt, for their pro rata share of such debt.

Prior to 1974, the Andersons, Leamers, Kristiansens, and Hansons were shareholders in, and in certain cases were officers and directors of, a Washington corporation known as AccuComp, Inc. By separate agreements, these people personally guaranteed "all bank indebtedness" AccuComp

owed to Peoples National Bank. The relevant provisions of the guaranties are set forth in the margin.[1]

The Francos never owned shares in AccuComp.[2] Nevertheless, on January 8, 1975, they personally guaranteed up to $60,000 of the debt AccuComp owed Peoples National Bank and, on July 24, 1975, extended that personal guaranty to a sum not to exceed $78,000. The printed portions of these guaranties were identical to the guaranties signed by the Andersons, Leamers, Kristiansens, and Hansons.

Subsequently, AccuComp defaulted on two promissory notes which totaled approximately $69,000 plus accrued interest. Peoples National Bank turned to the guarantors[3] for the balance remaining due after repossessing and liquidating certain collateral.

The Francos, on December 16, 1976, and the Andersons,

---

[1] The guaranties provided in part: "[T]he undersigned hereby unconditionally and at all times guarantees payment of any and all indebtedness, obligation or liability of said borrower to said Bank, now or hereafter existing, matured or not matured, absolute or contingent, individual or firm, whenever and wherever payable, in a sum not exceeding *all bank indebtedness* Dollars and interest, hereby waiving any and all notice of the acceptance of this guaranty, loans made and defaults in payment.
" . . .

"The undersigned further agrees that any extension of time may be granted to said borrower and *other security taken or released* at any time, *without notice,* and *without affecting the liability of the undersigned.*

"This guaranty shall be in addition to and without prejudice to any other security, negotiable or otherwise, which the said Bank may now or hereafter possess in respect of any moneys intended to be hereby secured, and said Bank shall be under no obligation to marshal in favor of the undersigned any such securities.

"The undersigned agrees that said Bank *may compound* with the said borrower or its representatives or any other party liable upon any other security held by said Bank, without affecting the liability of the undersigned hereon." (Italics ours.)

[2] Although the Francos never owned any shares in AccuComp, Inc., they affirmed in their guaranty that they had a direct financial interest in AccuComp, Inc., and that they would benefit directly from the extension of the maturity date on the loans to AccuComp, Inc.

[3] Peoples National Bank made no effort to recover from the Hansons on their personal guaranty. Additionally, no guarantor sought contribution from the Hansons.

on April 26, 1977, entered into written agreements with Peoples National Bank promising to make payments on AccuComp's debt. These agreements were made in part to induce Peoples National Bank to refrain from suing the Francos and Andersons on the entire accelerated sum.

In August 1977, Peoples National Bank sued the Kristiansens and Leamers to recover on their respective personal guaranties. The Kristiansens and Leamers then entered into a stipulation and agreement with Peoples National Bank under which the Kristiansens and Leamers respectively executed $6,800 and $15,000 promissory notes in favor of Peoples National Bank "in full and complete satisfaction of any claims of Peoples Bank" against their personal guaranties. The suit by Peoples National Bank against the Kristiansens and Leamers was then dismissed with prejudice.

> With respect to the stipulation and agreements with defendants Kristiansen and Leamer and the order of dismissal, the bank did not reserve any rights against the defendants Kristiansen and Leamer as multiple guarantors and did not express or reserve any rights with respect to the bank's claims against the other remaining guarantors on the AccuComp debt to Peoples Bank.

Finding of fact 21.

Having knowledge of these stipulations and agreements, the Francos and Andersons nevertheless entered into a new repayment agreement with Peoples National Bank to retire AccuComp's outstanding obligation to Peoples National Bank. As a result of these agreements, all claims between the bank and the Andersons and the Francos were settled.[4]

---

[4]Finding of fact 23 states in part, "[B]ased upon these agreements plaintiffs' claim against Peoples Bank and against defendants Anderson was settled and dismissed along with Peoples Bank [sic] claim against Franco and Anderson and Andersons' cross–claim against Peoples Bank and Franco. The only claims remaining in the suit then were the claims of Franco against defendants Leamer and Kristiansen and defendants Andersons' cross–claim against Leamer and Kristiansen as co–guarantors on the obligation of AccuComp to Peoples Bank, and Leamers counter claim against Franco and their cross–claim against Anderson and Kristiansen."

Thereafter and subsequent to the date AccuComp ceased doing business the Andersons

made substantial payments to the Internal Revenue Service of AccuComp, Inc.'s withholding tax liability which payments were in part for the benefit of Accu-Comp and reduced AccuComp's indebtedness to Peoples Bank in that said payments allowed Peoples National Bank to realize greater sums on the sale of fixtures, equipment, and accounts liquidated by Peoples Bank as a result of their security.

Finding of fact 25.

The Francos and Andersons then sought contribution from the Kristiansens and Leamers for the alleged excess over their pro rata share paid to the bank and the IRS. After presentation of plaintiff's evidence the trial court concluded that (1) the Francos, Andersons, Kristiansens, and Leamers, and perhaps the Hansons, were coguarantors; and (2) because Peoples National Bank released the Kristiansens and Leamers without expressly reserving any rights against them or the other coguarantors, (a) Accu-Comp's debt to Peoples National Bank was reduced in an amount proportionate to the percentage of coguarantors released, and (b) the Kristiansens and Leamers were released from any claims for contribution or exoneration by the Francos and Andersons. The court then entered an order dismissing with prejudice the claims of the Andersons and the Francos. The Francos thereafter assigned their claims against the Kristiansens and Leamers to the Andersons. This appeal followed.

On appeal the appellants accept the court's findings of fact but assign error to all of the trial court's conclusions of law. It is appellants' primary argument that the trial court erred in concluding that Peoples National Bank's release of defendants Leamer and Kristiansen, without the express reservations of any rights against those defendants or other coguarantors, resulted in a pro rata reduction of the obligation of all of the coguarantors on the AccuComp debt and operated as a release of defendants Kristiansen and Leamer

against any right or claim for contribution or exoneration by the coguarantors Franco and Anderson. The Andersons contend that all guarantors by the specific terms of their guaranty agreements, which permitted a creditor to give extensions of time and release security without affecting the guarantor's liability, waived any discharge which might otherwise have arisen through a release by the creditor. In effect they argue that the guaranties amounted to a prior notice equal in effect to a reservation of rights against coguarantors. Thus, they conclude that they are entitled to contribution from the Kristiansens and the Leamers.

The Kristiansens and Leamers argue in response that the failure of Peoples National Bank to reserve any rights against the remaining coguarantors unconditionally discharged them from any contribution obligation. Further, the respondents argue that the Andersons' and Francos' payments or agreements to pay any funds which exceeded their pro rata share, which were made after the appellants learned that Peoples National Bank released the respondents, were made voluntarily and are not subject to contribution claims.

Generally, coguarantors are entitled to the equitable right of contribution from each other.

> The doctrine of contribution among sureties or guarantors is based upon the equitable principles that, where several parties are equally liable for the same debt and one is compelled to pay the whole of it, he may have contribution against the others to obtain from them the payment of their respective shares. The doctrine is founded on an implied rather than an expressed contract. The right to contribution is not based upon the instrument on which the guarantors have become liable, but is based upon the idea that, when the guarantors signed such instrument, they impliedly agreed that if there should be any liability each would contribute his just portion. The mere fact that a right of contribution exists, *necessarily implies that the instrument out of which the liability grows has been paid and extinguished by one for the benefit of all.* Six R. C. L. 1036 *et seq*; 13 C. J. 825 *et seq*; Brandt, Suretyship and Guaranty, vol. 1 (3d ed.), §

279 *et seq.* One co-guarantor who has paid the guaranteed indebtedness may not arbitrarily collect from one of several co-guarantors but he is required to collect equally and ratably among those who are solvent. *Appleford v. Snake River Mining, Milling & Smelting Co.,* 122 Wash. 11, 15, 210 P. 26, 29 A.L.R. 268 (1922).

Also, generally, where a creditor releases one guarantor without the prior consent or agreement of, and without reserving any right against, the remaining coguarantors, the latter are exonerated to the extent to which they could have claimed contribution from the released guarantor had he not been released. Restatement of Security § 135, at 364 (1941) (and comment *b*); A. Stearns, *Suretyship* § 6.44, at 180 (5th ed. 1951). *Cf. Blewett v. Bash,* 22 Wash. 536, 542–43, 61 P. 770 (1900) (release of one guarantor without the consent of coguarantors discharges the liability of all); *Columbia Bank, N.A. v. New Cascadia Corp.,* 37 Wn. App. 737, 740, 682 P.2d 966 (1984). Therefore, respondents argue in support of the trial court's conclusion that because Peoples National Bank released the Kristiansens and Leamers without reserving any rights, the appellants' liability to the bank was reduced by the Kristiansens' and Leamers' pro rata share.[5]

A guarantor is not discharged by action of the creditor to which consent is given, and consent may be given in advance. 72 C.J.S. *Principal and Surety* § 158, at 644 (1951). Therefore, this equitable right to a pro rata reduction of liability may be controlled by specific contractual

---

[5]Conclusion of law 3 states:

"That the releasing of the defendants Leamer and Kristiansen as defendants in the prior action, King County Cause No. 831393, which Peoples Bank brought against defendants Kristiansen and Leamer on the personal guarantee of the debts of AccuComp, Inc., without the express reservation of any rights against those named defendants or other co-guarantors, resulted in a pro rata reduction of the obligation of all of the co-guarantors on the AccuComp, Inc. debt, in a proportionate share which the released co-guarantors, namely Leamer and Kristiansen, bears to the total numbers of guarantors, which was five, including Franco, Anderson, Hanson, Leamer and Kristiansen, or four total co-guarantors if Hanson is determined not to be a co-guarantor."

provisions to the contrary. *See Columbia Bank, N.A. v. New Cascadia Corp., supra.* Further, a guaranty agreement is enforceable according to its terms. As stated in *National Bank v. Equity Investors,* 81 Wn.2d 886, 919, 506 P.2d 20 (1973),

> An absolute and unconditional guaranty should be and is enforceable according to its terms. The courts are to enforce it as the parties meant it to be enforced, with full effect given to its contents, and without reading into it terms and conditions on which it is completely silent.

(Citations omitted.)

The guaranties here specifically provide that "other security" could be "released at any time, without notice, and without affecting the liability of the undersigned." The Andersons contend that coguarantors fall within the intended definition of the words "other security," *see Overcash v. First Nat'l Bank,* 115 Ga. App. 499, 155 S.E.2d 32 (1967), and, therefore, their liability as coguarantors was not affected by the bank's release of the Kristiansens and Leamers. We agree with appellants. Resort to the definition of "security" in *Webster's Third New International Dictionary* (1969) (definition 2, b), *Bouvier's Law Dictionary* (8th ed. 1914), *The Shorter Oxford English Dictionary* (3d ed. 1973), and Black's Law Dictionary (4th ed. 1968), as well as the common understanding of the circumstances surrounding the lending of money to cosignators or to one on the basis of another's guaranty or suretyship status, dictates that the term "other security" includes the obligations of cosureties.

In addition, the guaranty provision states that the bank could "compound with . . . any other party liable upon any other security held by said Bank, without affecting the liability of the undersigned hereon." *Webster's Third New International Dictionary* (1969) defines the verb "compound" as meaning,

> to settle amicably: adjust by agreement: discharge (an obligation) upon terms different from those which were stipulated, claimed, or demanded (as when a smaller sum

is accepted than was asked): compromise . . . to come to terms of agreement or payment: settle by a compromise . . .

This guaranty provision, therefore, clearly anticipated the situation arising here, *i.e.,* that the bank could release other coguarantors without affecting the liability of the Andersons and Francos.

According to the terms of the guaranties, the guaranties amounted to a prior notice equal in effect to a reservation of rights against coguarantors. It was a prior consent to the actions taken by Peoples National Bank in this instance. Therefore, the bank's unconditional release of Kristiansen and Leamer did not reduce the appellants' liability by the coguarantors' pro rata shares. Consequently, it is of no moment that the Andersons and Francos had knowledge of the stipulations and agreements between Peoples National Bank and the Kristiansens and Leamers before the Andersons and Francos entered payment agreements with the bank.

■ Further, not having their liability reduced, these circumstances require that the Andersons be entitled to the equitable right of contribution from the respondents. There is no question that the respondents were on notice that the bank retained rights against the Francos and Andersons for the balance due on AccuComp's debt, because the respondents knew that all guarantors had signed identical guaranties containing the above cited provisions. Thus, the policies differ in this case from those where the creditor fails to put the released guarantor on notice that he intends to reserve and exercise all rights against the remaining coguarantors, who in turn could seek exoneration or contribution from the released guarantor. Accordingly, the Andersons and Francos, as coguarantors of AccuComp's debt, are entitled to contribution from all other solvent coguarantors in an amount to be established on remand.

The appellants, however, contend that the Francos are subguarantors, rather than coguarantors, because the Francos, who guaranteed only a limited amount of debt

($78,000), did not become liable for the same obligation as that of the other guarantors. Thus, as subguarantors, the Francos argue that they are entitled to full reimbursement from the coguarantors.

■ Because the total amount due on the two notes at the time of default by AccuComp was less than $78,000 and because the Francos' guaranty (on its face) did not contemplate the existence of other guaranties nor provide for apportionment of the liability in the event of multiple coverage, we conclude that the Francos guaranteed the "same debt" or a "common obligation." *See Karnatz v. Murphy Pac. Corp.*, 8 Wn. App. 76, 82, 503 P.2d 1145 (1972). Accordingly, considering only the written guaranties, it is apparent that the Francos were coguarantors up to the amount they guaranteed, *i.e.*, $78,000.

The Andersons nevertheless contend that the equities require a finding that the Francos are subguarantors. They cite to comment *a* of the Restatement of Security § 145 (1941) which provides:

> Where there are two sureties, the usual relation is cosuretyship, but by agreement between them or *because of the equities of the situation*, one of them as between themselves, may be liable for the entire loss caused by the default of the principal and hence not a cosurety.
> . . .
> . . . [I]f the subsurety performs he is entitled to reimbursement from the principal surety. If the principal surety performs, he is not entitled to contribution from the subsurety.

(Italics ours.) *See also* A. Stearns, *Suretyship* § 11.18, at 481 (5th ed. 1951). To support their request for equitable relief they point to testimony in the record that agents for Peoples National Bank promised not to seek payment from the Francos before exhausting all avenues open against the other guarantors and that the Francos had no business interest, nor did they own shares of stock, in AccuComp.

■ Because the Andersons vis-a-vis the Francos attempted to evoke equitable relief, they bore the burden of proving the existence of circumstances which would sup-

port the requested relief. *Accord, Twohy v. Slate Creek Mining Co.*, 36 Wn.2d 801, 803, 220 P.2d 1075 (1950); *Alexander & Alexander, Inc. v. Wohlman*, 19 Wn. App. 670, 688, 578 P.2d 530, *review denied*, 91 Wn.2d 1006 (1978). They did not carry that burden. First, lack of business or ownership interest alone is insufficient to evoke equitable relief. Second, only the self–serving testimony of Mr. Franco tends to support the argument that Peoples National Bank made the purported promise. Testimony by the bank officer who arranged the guaranty with the Francos, however, refuted Mr. Franco's testimony. In light of the conflicting evidence, we are unable to conclude that the "equities" command reversal of the trial court's conclusion that the Francos were coguarantors.

Finally, the appellants assign error to the trial court's refusal to award Anderson contribution from the Leamers and Kristiansens for their pro rata share of AccuComp's withholding taxes owed to the Internal Revenue Service which the Andersons allegedly paid. The trial court's only finding on this issue states:

> At some time subsequent to the date on which Accu-Comp ceased doing business and the first agreement with Peoples National Bank with respect to the repayment of AccuComp's indebtedness, defendants Anderson made substantial payments to the Internal Revenue Service of AccuComp, Inc.'s withholding tax liability which payments were in part for the benefit of AccuComp and reduced AccuComp's indebtedness to Peoples Bank in that said payments allowed Peoples National Bank to realize greater sums on the sale of fixtures, equipment, and accounts liquidated by Peoples Bank as a result of their security.

Finding of fact 25. The trial court made no other finding of fact as to this claim of contribution nor did the court reach any conclusion of law that is reflected in a written conclusion of law. In addition, the record does not include a copy of the trial court's oral opinion. Therefore, we can only speculate as to the factual or legal basis for the rejection of the Andersons' claim of contribution for their alleged pay-

ment of AccuComp's tax obligation to the Internal Revenue Service or whether the court reached the question. The record is inadequate for review of this issue and therefore the issue must be resolved on remand.

Accordingly, we reverse and remand the cause to the trial court for a factual determination of the appropriate amount each coguarantor was required to contribute and whether that obligation has been fulfilled. In making such determination, the trial court should also determine whether the Hansons are to be considered coguarantors. Additionally, the trial court should consider whether or to what extent if any the Andersons' payment of AccuComp's tax liability entitles them to contribution.

CALLOW and SCHOLFIELD, JJ., concur.