[No. 1224. Decided May 17, 1894.]

THE CITY OF FAIRHAVEN, *Appellant*, v. E. L. COWGILL
*et al.*, *Respondents*.

OFFICIAL BONDS — ALTERATION—DISCHARGE OF SURETIES — ACTION
ON BOND — EVIDENCE — RATIFICATION.

In an action upon an official bond, the bond may be introduced in
evidence without first explaining an evident alteration in a material
part of the instrument.

Under the plea of a general denial, in an action upon a bond,
evidence is admissible to show an alteration in the instrument
after its execution. (DUNBAR, C. J., dissents.)

Where the bond of a city official has been altered after its execu-
tion by erasing therefrom the name of one surety and substituting
therefor the name of another person, the sureties who do not consent
to the alteration are thereby discharged; and the fact that the bond
is entrusted to the official for delivery to the city does not make
him the agent of the sureties to such an extent as to bind them for
changes made by him, nor charge them with fraud on account
thereof.

Although an official bond is executed charging the sureties with
separate and limited liabilities, in accordance with the provisions
of Gen. Stat., § 2911, yet such fact does not alter the rule that sure-
ties who do not consent to the release or withdrawal of a co-surety
are entitled to a discharge from liability on the bond.

The fact that sureties upon an official bond, immediately after
the discovery of a defalcation by their principal, unite with a co-
surety, who had been substituted without their knowledge in place
of another surety, in an endeavor to hold the money of the princi-
pal upon deposit in a bank, does not amount to a ratification of the
altered bond.

*Appeal from Superior Court, Whatcom County.*

*James H. Detrick*, and *Albert Sherman*, for appellant.
*Kerr & McCord*, for respondents.

The opinion of the court was delivered by

STILES, J.—One W. S. Parker was, during the year
1891, the city marshal of the city of Fairhaven, a city of

the third class.   At the time of his appointment Parker
was required to give a bond for the faithful performance
of his duties in the sum of $10,000.   A bond was pre-
pared in the proper form, with Parker as principal and
respondents Cowgill and Huntoon and one Wilson as sure-
ties.   The principal was bound in the penal sum of $10,-
000, and the sureties each in the sum of $3,333.33.   The
obligation was joint and several.   The bond was presented
to the council for approval, but upon the suggestion of
bondsman Wilson that it would be a breach of propriety
for him, while he was mayor of the city, to be a bondsman
for the marshal, it was agreed that the bond should be re-
turned to the marshal, and a new bond prepared and sub-
mitted.   The bond then before the council appears to have
been withdrawn and the name of Wilson carefully erased
from the body of it and the signature as well, and the
name of Pierce Evans substituted, after which the bond
was resubmitted to the council and approved and filed.

The respondents Cowgill and Huntoon had no knowl-
edge of the change in the sureties until after the events
which were the occasion for this action had transpired.
The body of the bond was written with a typewriter, in-
cluding the names of the sureties, and when the erasure of
Wilson's name was made, Evans' name was substituted
with a pen.   The signature of Wilson was, of course,
written with ink, and the name of Evans was written over
the erasure, with ink, also.   That there had been erasures
in both places was clearly evident from an inspection of
the paper.

After the marshal had misappropriated funds of the city
in his hands to the amount of over $10,000, and had ab-
sconded, this action was brought upon the bond against
Parker and the three bondsmen, of whom Cowgill and
Huntoon alone were served.   The complaint alleged the
execution and delivery of the bond in the usual manner

and included in it a verbatim copy of the instrument.· The answer contained a denial of each and every allegation of the paragraph which alleged the execution and delivery of the bond.    Upon the trial, the plaintiff, after proving the signatures attached to the bond, offered it in evidence. This offer was objected to, but the court overruled the objection and admitted the bond in evidence.    The action of the court in not requiring the plaintiff to explain the evident alteration in the material part of the instrument, before allowing it to be received, is supported by *Wolferman v. Bell*, 6 Wash. 84 (32 Pac. 1017); *Yakima National Bank v. Knipe*, 6 Wash. 348 (33 Pac. 834); *Murray v. Peterson*, 6 Wash. 418 (33 Pac. 969).

The first material point urged by the appellant city is, however, that the court permitted the respondents to show the facts concerning the execution of the bond, and particularly that the name of Wilson had been erased from it and that of Evans substituted without their knowledge or consent, under the denial of the answer; the claim being that these facts should have been specially pleaded.    This point brings up the question of what is provable in such a case under what is substantially a general denial of the execution and delivery of the bond.

It was incumbent upon the appellant to show that the respondents had executed and delivered the particular bond upon which the suit was brought.    On the other hand, it was the privilege of the respondents to show, under the form of denial made in the answer, any fact which tended to disprove the ultimate conclusion that they had executed and delivered the particular bond offered in evidence.    While it is true that under the code facts are to be pleaded, it is also true that the same code recognizes and provides for denials, both general and specific.    A general denial under the code is scarcely recognizable from the plea of the general issue at common law, and the same

kind of proof is admissible under the one as under the other. *Griffin v. Long Island R. R. Co.*, 101 N. Y. 348 (4 N. E. 740).

This practice in admitting proofs is commonly applied to cases of altered instruments. *Smith v. United States*, 2 Wall. 219; *Cape Ann National Bank v. Burns*, 129 Mass. 596.

The admission of the evidence mentioned was therefore proper, since it tended to show, not that the respondents had never voluntarily signed, but that they had neither executed nor delivered the bond upon which Evans' name was found as surety.

The next question which occurs is, as to the effect to be accorded to the facts proven. Appellant suggests that it was a fraud upon the city for respondents to permit an altered bond of this kind to be delivered to the city at all, and cites some cases from Illinois and elsewhere, where a negotiable instrument coming into the hands of an innocent purchaser was held to bind the maker of the original instrument in its altered form, although the alteration had been made without the knowledge of the maker; it being there held that because the maker had allowed his note to go into circulation with blanks, so that forgery could be perpetrated without its giving rise to suspicion in the mind of an innocent purchaser, the person thus careless should suffer the consequences rather than the one who was without fault. *Stoner v. Millikin*, 85 Ill. 218; *Comstock v. Gage*, 91 Ill. 328.

But the difference between such cases and this one scarcely needs pointing out to be made perfectly plain. Here the bond was filled up with the name of the person whom respondents supposed would be their coöbligor, and they executed and delivered it to the city with the expectation and reliance that it would remain in the condition in which it left their hands. They never saw it afterwards.

The city council had full control of the matter, saw the bond when it was laid before that body at its first presentation, and again after the name of Wilson had been erased. The face of the instrument showed for itself that it had been altered, both in its body and in the signature, and the council, as agent for the city, was bound to take notice of its changed condition. It is true that respondents had entrusted the bond to the marshal and made him their agent to deliver the bond which they had executed, but they did not make him their agent to make any changes therein, either in the material part of its obligations or in the names of the persons who were to be bound thereby; and they did nothing which, under the broadest construction, could be considered as in the least fraudulent. A bond altered in this manner has the effect to discharge those sureties who did not consent to the alteration. *Smith v. United States, supra; United States v. O'Neill*, 19 Fed. 567. See the discussion of these points in *King County v. Ferry*, 5 Wash. 536 (32 Pac. 538).

But it is maintained that under the law of this state, which permits sureties to charge themselves with separate limited amounts, and under the language of this bond which obligated each of the sureties for $3,333.33, as a joint and several obligation, the legal effect of the bond would be that each surety was separately liable for the limited amount as though he had executed a separate bond; and, inasmuch as the total default of the marshal was more than the gross penalty of the bond, the liability of each surety extended to the full amount of his obligation, and it made no difference whether one or more of the original sureties withdrew or was discharged.

The statute in question, Gen. Stat., § 2911, is merely permissive in its language. When the penal sum of any official bond amounts to more than $2,000, the sureties may become severally liable for portions not less than $500 of

such penal sum, provided that in the aggregate there are at least two sureties for the whole penal sum. This provision was doubtless made in deference to the fact that it is sometimes difficult to procure sureties who can qualify, or are willing to make themselves liable, for the principal of a large bond. But the privilege thus accorded to sureties does not seem to have been coupled with any condition which would show that they are thereby to be deprived of any of their rights under the general rules of law governing such matters. One of the principal reasons why sureties have been held discharged in cases where one or more of them have been permitted to retire from the obligation without the knowledge of the others, is that sureties are peculiarly entitled to the right of contribution among each other. This right is equitable in its nature and has been carried to great lengths by the courts. A general discussion of this subject will be found in Brandt on Suretyship and Guaranty, chap. 11; from which it will appear that sureties for the official conduct of an officer, even though they might have made themselves liable by separate bonds, and without knowledge on the part of one that another was so bound, would still be liable to each other for contribution in case of a default on the part of their principal. For the purpose of enforcing the contribution it makes no difference whether the bond be a joint and several, or simply a several, obligation. The right of one to have all the others who are equally bound with himself contribute their proportion of the loss which may be sustained by reason of the default of the principal still exists. Therefore, there is ground for the claim of respondents that Wilson, who was the man whom they chose to be their co-obligor, and upon whom they relied to share such loss as they might incur by reason of the marshal's defalcation, should continue in that position, or that if he were discharged they should be discharged also.

Under the general denials of the answer it was doubtless error for the court to admit testimony concerning the comparative responsibility of Wilson and Evans, both because the facts were not pleaded and because the evidence was immaterial, since the law fully protected the respondents by discharging them from their liability, whether Evans was responsible or not. But this error was immaterial, because the legal effect of the alteration of the bond was to discharge the respondents without regard to whether Evans was equally responsible with Wilson or not.

There remains to be considered but one matter, viz., the claim of appellant that there was a ratification of the bond by the respondents after the name of Evans had been substituted for that of Wilson. After the defalcation of the marshal, and his departure, it was some two weeks before the state of his accounts became known. Investigation showed that he was short upwards of $10,000, and that this bond was in existence. Respondents, by some means, were then made aware for the first time that Evans was their coöbligor. They also learned that a sum of money was credited upon the books of one of the local banks to W. S. Parker. Knowing themselves to have signed the bond, they, with Evans, endeavored to secure the money in the bank for their benefit in case their liability should be established. The bank acceded to their demands, and for a few days Parker's balance was formally subject to their control. But upon taking legal advice, and upon inspection of the bond, they became satisfied that they were not legally bound by its provisions, and they relinquished all claim to the bank balance, and from that time denied their liability. The fact of their interference with the deposit to Parker's credit is claimed to have amounted to a ratification of the bond with Evans as co-surety.

Upon this point it might be stated as a conclusive answer to the proposition that the action of respondents

amounted to a ratification, that the court submitted that question to the jury and their verdict in that respect ought to stand. But were it otherwise, we do not think the fact proven tended in any manner to show ratification. The default had occurred and the principal had absconded and the action of the respondents in endeavoring to protect themselves from what they feared might be a heavy liability ought not, under such circumstances, to be charged to them as ratification, unless it should be made to appear that they intended it to operate with that effect. Up to that time it did not appear that the city had made any claim upon them, or that their action was anything else than such as men unversed in the law governing sureties might reasonably take, without its being charged against them that they were intending to admit the full measure of their apparent liability on the bond.

For these reasons the judgment will be affirmed.

HOYT, ANDERS and SCOTT, JJ., concur.

DUNBAR, C. J. (*dissenting*).—I am unable to conceive how, under the provisions of our code, the question of the alteration of the bond can be put in issue by a general denial, which in this case is equivalent to the plea of *non est factum*. The object of the code was to simplify the pleadings, and to notify the parties litigant what facts are expected to be proven in the trial of the cause. In this case, if the fact was that the instrument had been changed after it was executed, and the defendants intended to rely on that fact, they should have alleged it, and should not have alleged something that was misleading, and that absolutely failed to notify the plaintiff what the character of the defense was. In other words, under both the letter and spirit of the code, facts should be pleaded instead of fictions. This was the doctrine announced by this court in *Distler v. Dabney*, 3 Wash. 200 (28 Pac. 335), and a close

adherence to the doctrine announced in that case would wonderfully simplify the administration of the law and prevent frequent miscarriages of justice. For this reason I am compelled to dissent to the majority opinion.