MILES CITY BANK, Appellant, v. ASKIN, Respondent.

No. 9170.

Submitted March 24, 1953.    Decided May 27, 1953.

257 Pac. (2d) 896.

Messrs. Farr, Colgrove and Farr, Miles City, for appellant.

Mr. W. B. Leavitt, Miles City, Mr. F. F. Haynes, Forsyth, for respondent.

Mr. Roland V. Colgrove and Mr. Leavitt argued orally.

MR. JUSTICE FREEBOURN:

This is an action to recover on a $5,000 check which was drawn on the Bank of Baker, at Baker, Montana, and cashed by the Miles City Bank of Miles City, Montana, upon which payment was stopped.

Judgment favored Askin and the Miles City Bank appealed.

The case was before this court on a former appeal, Miles City Bank v. Askin, 119 Mont. 581, 179 Pac. (2d) 750, 171 A. L. R. 790, and a new trial was granted.

The facts are stated in our first opinion and further statement thereof is unnecessary here.

The law as laid down in the former opinion is the law of the case and must be adhered to by us on this appeal. Ivins v. Hardy, 123 Mont. 513, 217 Pac. (2d) 204; Anderson v. Border, 87 Mont. 4, 285 Pac. 174; Carlson v. Northern Pac. Ry. Co., 86 Mont. 78, 281 Pac. 913.

Upon retrial the Hon. W. R. Flachsenhar, district judge, was called in to try the case without a jury. He made findings of

fact and conclusions of law and his judgment dismissed plaintiff's action "with prejudice" and awarded Askin his costs.

Upon the former appeal this court held that an affirmative defense, pleaded in Askin's answer, had been erroneously stricken. This affirmative defense was again pleaded, by amended answer, and was with the evidence in support thereof before the district court upon the second trial. It is as follows: "That at the time plaintiff paid the alleged check it had not been accepted and its payment had not been guaranteed by the said Bank of Baker, the drawee bank thereof, and plaintiff knew that the payment thereof could be countermanded, revoked and stopped by the defendant at any time before the alleged check was presented to the said drawee bank and accepted and paid by it; that, as defendant is informed and believes, the said J. W. Clark was not a customer of and did not carry a deposit account in plaintiff's bank. The plaintiff was not required to pay said Clark cash on the presentation of the said alleged check, but it could in the exercise of ordinary diligence and in the usual and ordinary course of business should have sent the alleged check to the drawee bank for collection and should have received the proceeds thereof before paying said Clark the said check or any of the proceeds so collected, and it could and should have thereby protected itself against loss; that in paying the alleged check in cash, instead of sending the same for collection the plaintiff was negligent and any loss sustained by plaintiff in paying and cashing said check was due to its own negligence and was not any fault of the defendant. Defendant further alleges that by reason of the negligence of the said plaintiff in paying said check in cash instead of sending it through for collection he was thereby wrongfully deprived of his defenses on said alleged check as against the payee therein named J. W. Clark."

In the former decision this court said [119 Mont. 581, 179 Pac. (2d) 753]:

"In view of the suspicious circumstances surrounding the presentment of the check, a serious question is presented as to

whether plaintiff can or may be considered a holder in due course'', as contended by the Miles City Bank.

''In view of the evidence, can it be said that the check in suit is 'regular upon its face,' and that the plaintiff bank had no notice of any infirmity in the instrument, and took it in good faith? We think these questions are determinative, and unless the answers be in the affirmative, the plaintiff cannot be considered a holder in due course. Under the circumstances shown here, the question of whether, or not, plaintiff is a holder in due course should have been determined by the jury.''

The district judge, upon retrial, concluded: ''That the circumstances surrounding the presentment of the check were sufficient to have caused plaintiff to become suspicious of its apparent alterations and infirmities, and its failure to take notice thereof constituted bad faith so as to overcome the legal presumption that it was a holder in due course.''

We think that such conclusion is supported by the evidence.

In the former opinion we said:

''And we think that should the jury find that the alteration was so obvious as to impart notice thereof to plaintiff, it might well conclude that plaintiff's action amounted to bad faith toward the defendant; certainly, in such event, it must conclude that cashing the check amounted, at the least, to gross negligence. * * *

''We further conclude that the trial court erred in refusing evidence offered to prove that in cashing the check as it did the plaintiff bank departed from the usual and ordinary course of business adopted and usually adhered to by plaintiff. Under the circumstances of this case, such evidence is competent at least as bearing upon the negligence of plaintiff in cashing the check, instead of forwarding it for collection, as dictated by caution and plain common sense.''

The trial judge, upon retrial concluded: ''That by paying $5,000.00 in cash to Clark, a comparative stranger, who had no credit rating or business standing, on a check on an

out-of-town bank, signed by one unknown to plaintiff, without first taking the precaution of sending the check in for collection, constituted, under the circumstances of this case, gross negligence on the part of the plaintiff.'' We think the evidence justifies such conclusion.

In the former opinion, in considering the verdict and judgment which plaintiff bank had been awarded in the amount of $5,000, this court said, ''we hold that the evidence was insufficient to sustain the verdict and judgment * * *.''

Plaintiff called eight witnesses in the first trial and four witnesses upon retrial and presented no new evidence.

Appellant bank contends that the trial judge did not find that the $5,000 check had been altered. The trial court found that ''the check for $5,000.00 * * * is made out in more than one handwriting * * * that the alterations were material and have the appearance of irregularities and sufficiently manifest and visible to impart notice of infirmity to anyone negotiating the same. The check in suit is not regular upon its face and that the plaintiff * * * submitted no proof of when or by whom the apparent alterations on the check were made.''

Defendant Askin testified that he wrote no check for $5,000 and that one of the $150 checks ''was raised to the $5,000.00.'' L. K. Hills, president of the Baker Bank, testified when he examined the check it showed ''some irregularities and erasures, changes * * * what we regarded as changes or alterations on it; we thought we could detect some changes, erasures and alterations, in the check, differences in handwriting and so forth.''

We think that the trial court was justified in finding the ▮ check was materially altered and in making finding of fact No. 5 to that effect. Nor did the trial judge err in making finding of fact No. 6 and conclusions of law Nos. 2, 3, 4 and 5.

Four bankers testified that, under the circumstances here existing, the $5,000 check should have been sent through for collection before any cash was paid out. Claude M. Jones, with 34 years of bank experience, then with the First National Bank of Miles City, said that ''most banks belong to the American

Bankers Association which has a code of uniform practices which pertains to collection of checks * * * and quite uniformly adopted by most banks * * * in Eastern Montana. * * * A bank in taking a check drawn on an outside bank either for deposit or for the payment of cash, recognizes the fact that there is considerable risk in accepting the item; that there could be several things that could happen, the payment might be refused on the check, the man might die; account might be garnisheed, payment stopped, various factors, so in order to protect ourselves in any check if it's credited to a personal account we are going to be sure that the account is sufficiently large that if the check is returned unpaid that we can charge it back; if we pay it out in cash we are going to be absolutely sure that the man we pay it to is financially responsible to reimburse us and if he is a stranger we are certainly going to enter it as a collection item and send it to the drawee bank for payment.''

The employee of the Miles City Bank who paid out $5,000 cash when the questioned bank check was presented, testified: He had known J. W. Clark, the man who cashed the check for ''three weeks''; that he did not know what business Clark was in; that he did not know if Clark lived in Miles City; he thought Clark might have had ''a small savings account'' in the bank at the time the $5,000 check was cashed; that he called the Baker Bank to find out if Askin had enough money in that bank to cover the check; that he did not know George Askin whose name was signed to the check; that he closely examined the check and observed a difference in the shading of the figures $5,000 and the rest of the check; that at the first trial he testified: ''But you had no hold on Mr. Clark if the check wasn't good, did you? A. No. * * * He had no money on deposit? A. No.''; that the check appeared regular on its face and that he did not consult with his superior officer before cashing the check.

We have examined all other assignments of error and find no merit in them.

92

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, ANGSTMAN and ANDERSON, concur.