[No. 36487. Department Two. September 26, 1963.]

C. A. LEMBO, *Appellant,* v. MARY DELORES FEDERICI, *as Administratrix, Respondent.**

*Reported in 385 P. (2d) 312.

*Rosling, Williams, Lanza & Kastner* and *Joseph J. Lanza,* for appellant.

*Curran & Curran,* for respondent.

DONWORTH, J.—This is an action by the payee of a promissory note against the estate of the maker for the balance due thereon in the sum of $1,030.80, together with interest and reasonable attorneys' fee.

The testimony of the payee, C. A. Lembo (appellant herein) was that he had known the deceased, Thomas Federici, approximately 40 years; that, for several years after coming to this country from Italy, he had worked for the deceased in the barbering trade; and that they had been good friends. Appellant also testified that he had loaned money a hundred times to the deceased without any note, but that he required a note in this instance because of a business transaction he had had with another party who had died and there was no written memorandum embodying their leasing agreement, which resulted in its unenforcibility.

The note in question is dated November 5, 1957. The due date is December 5, 1957, and there is a provision that the principal should bear interest at the rate of 6 per cent per annum thereafter. The note is made out on a printed form for a negotiable promissory note provided by the Seattle-First National Bank.

A claim was filed against the estate of Thomas Federici, based upon the note in question, was disallowed by the administratrix, and this action followed.

At the trial, respondent objected to the admittance in evidence of the promissory note sued upon on the ground that alterations apparent on its face made it incompetent in the absence of an explanation of the alterations. The trial court admitted the note in evidence, but reserved his ruling on respondent's objection. At the close of the trial, the court concluded that the note had been altered on its

face within the meaning of the Negotiable Instrument Law, and that the court would have to find for respondent because appellant had been unable to explain the alterations because of the dead man's statute, *i.e.* appellant was prevented, by respondent's objection, from testifying to a transaction with the decedent. The court then ruled that respondent's objection to admitting the note in evidence would be sustained.

The trial court made the following findings of fact in regard to the alleged alterations:

"III. The Defendant claims and the Court finds by a fair preponderance of the evidence that the note described in Paragraph I appears, on its face, to have been altered or changed with regard to the amount thereof due and payable to Plaintiff. The specific changes or alterations of said note appear to have occurred in the upper right corner of the note in and around the printed dollar sign where a figure originally appearing on the note has apparently been erased and overwritten. The erased figure appears to have been in the same ink as the dates and signature of the maker, all appearing on the face of the note. Some apparent unexplained alterations or changes also appear to have occurred in the space provided for writing out in words the amount due on the note. Expert testimony adduced by the Defendant confirmed the alteration or changing of this note and revealed that the note had been written in at least four different inks and with four different pens, all of which is also apparent upon the face of this note. Such testimony further confirmed that the figures in the note plainly written on the face of the note $1,200.00 were in different ink than the dates or the signature on the note and different ink from either ink used in the space provided after the dollar sign in the upper right corner of the note.

"IV. The Court finds that the alterations described above constitute a material alteration of the amount payable under the note and that the same are unexplained by the payee in the note."

From the above findings, the court concluded:

"I. That the apparent change or alteration of the amount payable under the note described in the Findings above constitute material alterations of the note as described under R.C.W. 62.01.124 and R.C.W. 62.01.125, being the Washington version of the negotiable instrument law.

"II. The alterations described being material alterations of a negotiable instrument apparent upon the face of the instrument, therefore, under the quoted section of the statute under Paragraph I, the note should be declared to be void."

The assignments of error raise only two issues: (1) Was there a material alteration? (2) Assuming that there was such an alteration, was the burden upon the payee to explain it?

RCW 62.01.125 provides:

"Any alteration which changes—

" . . .

"(2) The sum payable, either for principal or interest;

" . . .

" . . . or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

 Whether there was an alteration is a question of fact, and we shall not disturb the findings of the trial court when they are supported by substantial evidence. We find such evidence in this case.

Appellant contends that, in any event, there was no *material* alteration evidenced, since the sum written in words controls rather than the sum written in numbers in the margin, under the provision of RCW 62.01.017(1). He then concluded that the "2", overwritten by a hieroglyphic which could be construed as a symbol for "and"— which appears between the words "One thousand" and "two hundred dollars"—could not change the amount of the note. The problem is that this is not the only apparent alteration where the sum has been written in words. It appears from the record that the trial judge believed that, among other alterations, the "t" in the "two" was an alteration and had been written over a symbol for "and," and that the "w" was really an "n." Thus, he concluded that there was an alteration changing "& no hundred dollars" to "two hundred dollars."

 While the court was giving its oral decision, it was asked by counsel:

"Mr. Lanza: Your Honor, would you care to explain what you consider were the material alterations so that we can propose findings? The Court: I think that I have talked about it enough on the record. I have stated what my original reaction was when I looked at it."

When the oral decision is consistent with the findings of fact, such findings are to be read in light of the oral decision. *El Cerrito, Inc. v. Ryndak,* 60 Wn. (2d) 847, 376 P. (2d) 528 (1962). Thus, we attribute the alteration in the word that now reads "two" as among the alterations referred to by the court in its findings of fact and conclusions of law.

We now consider the second issue, *i.e.* when there is an apparent alteration in a promissory note, is the burden upon the payee to explain the alterations? The holdings of this court, in *Wolferman v. Bell,* 6 Wash. 84, 32 Pac. 1017 (1893), and *Yakima Nat. Bank v. Knipe,* 6 Wash. 348, 33 Pac. 834 (1893), is that there is a presumption that when a promissory note is offered in evidence it is then in the same condition as when signed, even though an alteration is apparent on its face.

This presumption has been held to apply to other instruments in writing. *Fairhaven v. Cowgill,* 8 Wash. 686, 36 Pac. 1093 (1894) *bond; Kleeb v. Bard,* 12 Wash. 140, 40 Pac. 733 (1895), *bond; Baylis v. Kerrick,* 64 Wash. 410, 116 Pac. 1082 (1911), *deed; Gould v. Gould,* 99 Wash. 204, 169 Pac. 324 (1917), *promissory note and mortgage; Engstrom v. Peterson,* 107 Wash. 523, 182 Pac. 623 (1919), *deed.*

If the above presumption applies to the promissory note in issue in this case, it would follow that judgment should have been for appellant, since RCW 62.01.120 provides that a negotiable instrument which is materially altered is not avoided against a party to the instrument who has assented to the alteration.

In most jurisdictions where there is a general presumption in favor of the validity of an instrument offered in evidence, such presumption is subject to an exception when an apparent alteration is of a suspicious nature. Under such circumstances, the person who claims under the instrument is required to explain the alteration.

Bank No. _____ Due Dec 5-1957 Seattle, Wash., Dec 5 19 57 $1000 00
 $200 00

_____, after date, for value received, I promise to pay to the order of

C. A. Lembo

at

SEATTLE-FIRST NATIONAL BANK, at its METROPOLITAN BRANCH, Fourth Avenue and Union Street, Seattle, Washington,

One thousand & two hundred dollars 1200 00 _____ DOLLARS

with interest thereon from Dec 5-1957 until paid at the rate of 6 per cent per annum, payable and if said principal and interest are not paid when this note becomes due, the interest shall then, and thereafter quarterly, be added to the principal sum and become a part of said principal, and said principal shall thereafter bear interest at the same rate. For value received each and every party sign- ing or indorsing this note waives presentment, demand, protest, and notice of non-payment thereof, binds himself as a principal, not as a surety, and promises to pay all costs of collection in case payment shall not be made at maturity; and further promises, in case suit is instituted to collect the same or any portion thereof, to pay such additional sum as the court may adjudge reasonable, as attorney's fees in such suit, and that at the option of the holder hereof the venue of said suit may be laid in King County, Washington.

Thomas Lembo

Address _____

Form 67 PS

Thus, it is stated in 4 Am. Jur. (2d), Alteration of Instruments § 80, that:

"With regard to the time when an alteration apparent on the face of an instrument will be presumed to have been made, the authorities seem to be in irreconcilable conflict, and there are, broadly speaking, the following three different views: (1) the view that the alteration will be presumed to have been made before or at the time of the execution of the instrument; (2) the view that an alteration will be presumed to have been made after the execution of the instrument, and (3) the view that no presumption arises from an alteration apparent upon the face of the instrument. An alteration is deemed to be apparent on the face of the instrument in cases of interlineation, erasure, difference of handwriting, changes of figures or words, or other irregularities on the face of the paper.

"In addition to these conflicting rules, such a presumption, according to some decisions, is made to depend upon the manner of executing the instrument, or whether its execution was denied under oath, or upon the character or contents of the pleadings in other respects. *However, an examination of the decisions leads to the conclusion that whatever doctrine may be theoretically adhered to in any particular jurisdiction regarding the presumption as to the time of apparent alterations, yet in the greater number of cases the person who claims under or offers in evidence an instrument which is at all suspicious by reason of an apparent alteration will be required to explain and remove the suspicion. If, for instance, there is an obvious erasure, or the alteration is otherwise suspicious, as where it appears to be contrary to the probable meaning of the instrument or where it is in a handwriting different from the body of the instrument, the party offering the instrument must explain the circumstances. Such explanation is sometimes required before the instrument is admitted in evidence, but often it will be admitted and the explanation will be received before the jury. This view of the effect of suspicious alterations, while merely an application of the general rule in those jurisdictions where the presumption is against the instrument in case of apparent alterations, constitutes a limitation or exception in those jurisdictions where either there is no presumption as to the time when an apparent alteration was made, or where*

*the presumption is in favor of the instrument."* (Italics ours.)

In *Klebba v. Otto,* 187 S. W. (2d) 499, 501 (Mo. App. 1945), the Missouri court stated:

"It is contended that the note shows on its face that it has been materially altered in that the second '1' in the figure 11 was changed to a 4 by the use of a different pen and ink from that used in other parts of the note. The rule has been stated in Meffert v. Lawson, 289 Mo. 337, loc. cit. 361, 233 S. W. 31, 38, as follows: 'The ancient rule of evidence, as stated and discussed by Mr. Greenleaf (1 Gr. Ev., § 564), was that alterations and erasures of written instruments were presumed to have been made at or prior to the time of their execution. The trend of authority is still in favor of the rule as thus declared. However, where an alteration or erasure appears suspicious on its face— for example, where a different ink has been employed at the point of erasure from that elsewhere used in the instrument—it demands explanation. *In the presence of this, or equally cogent circumstances of a suspicious nature, the law presumes nothing, and the question as to the time when the person by whom, or the interest for which, the alteration was made are matters of fact to be found by the jury upon proof adduced by the party offering the instrument in evidence.'"* (Italics ours.)

This same quotation was quoted with approval in *Miles City Bank v. Askin,* 119 Mont. 581, 179 P. (2d) 750, 171 A.L.R. 790 (1947).

█ We believe that the rule that requires a party offering a suspicious instrument wherein there is an apparent alteration to explain the alteration, is well found in public policy and we hereby recognize it as the law in the state of Washington. The general rule set forth in *Wolferman v. Bell, supra,* and *Yakima Nat. Bank v. Knipe, supra,* is thus modified in accordance with this opinion.

█ Whether an instrument is suspicious can only be determined by the circumstances present in each case. However, we have no doubt that the promissory note in question in the case at bar is a suspicious instrument and that the trial court was justified in requiring an explanation of the alterations.

The trial court, in its oral decision, stated no inference was to be made from its decision that appellant had acted fraudulently in bringing this action. With this conclusion we concur. Appellant was prevented from explaining the apparent alterations by the dead man's statute, RCW 5.60-.030. To say that the imposition of the rule requiring appellant to explain the alterations will result in a hardship to him if he has a valid claim, cannot excuse the rule's application, since to invoke the general presumption that the alteration was present at the time of execution of the note could equally result in hardship to the estate if the claim is not valid.

The judgment appealed from is affirmed.

OTT, C. J., FINLEY, and WEAVER, JJ., and DAWSON, J., Pro Tem., concur.