THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
FRED ROMERO, DEFENDANT AND APPELLANT.

No. 10841
Submitted May 10, 1965. Decided July 21, 1965.
404 P.2d 500

78

Arnold A. Berger (orally), Billings, for appellant.

Forrrest H. Anderson, Atty. Gen., Donald A. Douglas, Asst. Atty. Gen. (orally), Helena, William J. Speare, County Atty., Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant-appellant, Fred Romero, of a conviction of grand larceny on two counts of grand larceny, brought about by an Information filed February 28, 1964, in the district court of the thirteenth judicial district, in and for the County of Yellowstone.

The case was heard by the Honorable Charles B. Sande, District Judge. Trial was had by jury which resulted in a conviction on both counts and a sentence of fourteen years on each count to run concurrently.

The testimony revealed that in the early morning hours on

February 21, 1964, Jerry Aarstad went to the Buffalo Steak House and while there a jacket containing a check in the amount of $90.10 was taken from him. His testimony shows that he laid the jacket down in a booth next to one in which the defendant and others were seated, and while away from the booth approximately three minutes the jacket disappeared. Earlier in the day he had been paid for work done at the Great Western Sugar Company by check No. 12194, in the amount of $90.10. He testified that the check was in an inside zipped up pocket of the jacket when he went to the cafe. When he returned to the booth and noticed that his jacket was missing, he looked on the floor and around the cafeteria and was informed by Mrs. Glady Finch, a waitress at the Buffalo Steak House, that the jacket had been taken by the defendant.

Mr. Aarstad called the Billings Police Department and shortly after they arrived the defendant returned to the Steak House and was pointed out by Mrs. Finch as the man who had taken the jacket. He was placed under arrest and later that evening was released on bond. At the time the defendant returned to the Steak House he did not have the jacket with him, and denied that he had taken it.

Mrs. Finch testified that she was cleaning up in the booth in which the defendant had sat down and in doing so picked up the jacket and was about to go out into the kitchen to hang it up when she passed the defendant's booth and the defendant said "That is my jacket", and removed it from her arm. She further testified that immediately after taking the jacket the defendant left the cafe.

Concerning the second count to the Information, that of the forgery of the check in the amount of $90.10, Mr. Robert McCullough, Assistant Manager of the South Side Safeway Store in Billings, Montana, testified that on February 22, 1964, defendant brought in a badly beaten up check to see whether it could be cashed. His testimony concerning this occurrence is as follows:

"He came to the office and asked if he could cash a check that was torn, his children had torn it, and he wondered if it would still be cashable, it had already been mended with scotch tape and it was presentable I thought and would be taken, so I asked him to endorse it which he did and I okayed it and cashed it and gave him the money."

Mr. McCollough further testified that he had seen the defendant around the store and positively identified him as the man who endorsed the check in his presence. It should also be noted that he put an address of 419 South 34th Street on the back of the check. When shown the endorsement, the true owner, Jerry Aarstad stated that this was not his signature, that he did not live at the address above given, and that his address was 601 Parkhill Drive, Billings, Montana.

Defendant sets forth seven specifications of error, which are as follows:

(1)   there was insufficient competent evidence to justify a verdict of guilty;

(2)   evidence was presented and received without necessary and proper foundation;

(3)   witness Raymond Wise was improperly endorsed upon the Information, and the defendant was thereby deprived of his right to have two days within which to prepare for trial;

(4)   the witness Raymond E. Wise, Jr., who had not been endorsed on the Information was permitted to testify;

(5).   the jury was improperly instructed;

(6)   the defendant was prevented from impeaching a witness on a very important point; and

(7)   the defendant did not receive a fair trial.

Concerning specifications 1 and 2, the defendant lays his entire attack on the validity of the instrument in question, to-wit, the check in the amount of $90.10. While the Great Western check does not contain a date, the testimony does reveal that it was paid to Jerry Aarstad in the amount of $90.10,

that it was accepted by him in payment of wages due him. Too, that it was later accepted by Mr. McCollough of the Safeway stores, who accepted the defendant's explanation as to how the check got torn and that the defendant received from Mr. McCollough the $90.10 called for by the check. To argue now that this check was not a negotiable instrument, and does not come within section 55-907, R.C.M.1947, concerning what constitutes a material alteration, must fail, for the tearing of the check and its repair does not constitute a spoilation as set forth in the above statute and is therefore not grounds for avoidance.

It should be further noted that there was no objection to the introduction of the check at the time of trial, nor to the proof of its genuineness. Apparently, the defense counsel at the time of trial relied on the defense of mistaken identity and, such approach having proved unsuccessful, the defendant cannot now be given a new trial for the failure of defense trial tactics at the time of trial.

This court, in the case of Miles City Bank v. Askin, 119 Mont. 581, 591, 179 P.2d 750, 755, 171 A.L.R. 790, said:

"Ordinarily the question of whether a particular alteration is, or not, manifest or visible is one of fact for the jury, unless there can be no reasonable difference of opinion in which case it becomes a question of law. Paton's Digest of Legal Opinions, Vol. I, p. 107; Chamberlain v. Greer, 135 Wash. 340, 237 P. 719. We therefore conclude that the ultimate question of whether or not plaintiff is a holder in due course must be determined by the jury, such determination to be based upon its findings as to whether, (1) the check was, in fact materially altered subsequent to its execution and delivery, and (2), if so, was such alteration so manifest and visible as to reasonably impart notice to plaintiff of an irregularity of and infirmity in the check."

Defendant's specifications of error 3 and 4 go to the endorsement of the name of Raymond E. Wise to the Information. It

should be noted here that the Information was filed on February 28, 1964, and that the defendant plead not guilty when arraigned on March 2, 1964. The defendant changed counsel on April 24th, and on May 4th the case was set for trial on May 18th. On May 12th the county attorney filed a motion to endorse additional witnesses, and said motion was heard and granted on May 13, 1964, five days prior to trial which commenced May 18, 1964.

The name of the additional witness requested and granted was listed in the motion as Raymond Wise. When he appeared at the trial his name turned out to be Raymond E. Wise, Jr. He was the Assistant Cashier of the First National Bank of Billings and his testimony went only to the validity of the check and the fact that the Great Western Sugar Company banked at his bank.

The record contains no motion for a continuance by trial counsel nor was there any claim of surprise or an objection raised to the calling of Raymond E. Wise, Jr., as a witness.

Where error is predicated upon the court's allowing the endorsement of additional witnesses to the information, such a contention has been foreclosed by the prior decisions of this court. See State v. McLeod, 131 Mont. 478, 311 P.2d 400; State v. Gaffney, 106 Mont. 310, 77 P.2d 398.

In its most recent opinion concerning this point in the case of State v. Johnston, 140 Mont. 111, 367 P.2d 891, the court held:

The failure of the county attorney to endorse the name of a witness on the information was not error where the failure was inadvertent and the county attorney timely informed the court-appointed counsel for the defendant of the omission and of the intention to move the court for an order permitting the endorsement of the witness on the information.

To defendant's specification 5, that the court misdirected the jury in a number of instances, we find no merit. The defendant alleges that instruction 16 which contains part of section 93-

2001-1, R.C.M.1947, was incomplete, in that it covered only
subdivisions 1, 2, 4 and 6, and, that the court in leaving out
sub-divisions 5 and 7 completely failed to properly instruct
the jury on the pertinent provisions of such section which
would have been favorable to the defendant.

██ First, it should be noted that defense counsel at the
time of trial made no objection to the offered instruction which
became court's instruction 16. In other instructions the court
adequately covered such subdivisions of the above-quoted stat-
ute, sufficiently to properly instruct the jury when all of the
instructions are read as given by the court. Had the defend-
ant felt the court improperly instructed the jury on all the
aspects of the case, it was his duty to submit instructions which
more fully covered the particular matter which he was dis-
satisfied with, and in failing to do so he cannot now allege
prejudicial error.

The language of section 94-7201, R.C.M.1947, interpreted by
this court in the case of State v. Donges, 126 Mont. 341, 343,
251 P.2d 254, covers the defendant's objections as set forth
in specification 5. There this court said:

" 'On such settlement of the instructions the respective coun-
sel, or the parties, shall specify and state the particular ground
on which the instruction is objected or excepted to, and it shall
not be sufficient in stating the ground of such objection or
exception to state generally that the instruction does not state
the law, or is against law, but such ground of objection or
exception shall specify particularly wherein the instruction is
insufficient, or does not state the law, or what particular clause
therein is objected to. * * * No motion for new trial on the
ground of errors in the instructions given shall be granted by
the district court unless the error so assigned was specifically
pointed out and excepted to at the settlement of the instruc-
tions, as herein provided; and no cause shall be reversed by
the supreme court for any error in instructions which was not

specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error and exception incorporated in and settled in the bill of exceptions, as herein provided.' "

█ Concerning defendant's specification 6 that he was deprived of the right to impeach the principal witness, Mrs. Gladys Finch, we find no merit. A review of the entire testimony of Mrs. Finch and that of the defendant at the time he testified at the trial does not reveal a proper question being posed to him as will hereafter appear from the testimony, after a proper foundation was laid for impeachment, therefore, there is no basis for this specification of error as the record stands.

From the record the following appears:

"Q. Are you absolutely positive that you handed the jacket to Fred Romero and not Rueben Montez? A. I didn't hand it to anybody, it was on my arm and Fred just took it off my arm.

"Q. Well were you facing both of them at the same time? A. Yes.

"Q. But you didn't see either, did you see, you saw them all go out of the place at the same time? A. Yes.

"Q. At the time, did you ever identify Mr. Romero to the police officers? A. The second time he came back.

"Q. The second time he came back? A. Yes.

"Q. At that time what did you tell the police officer, could you describe just briefly what happened when the police officer arrived and what did the police officer say? If you recall. A. He asked me if that was the boy that took the jacket and I said, 'Yes'.

"Q. Did you just say, 'Yes', or did you make a statement approximately substantially as follows: 'I don't know, they all look alike to me.' A. No, I didn't say that.

"Q. You made no statement like that? A. No.

"Q. In other words you are positive Mr. Romero was, he

was the only one there, is that correct? A. Joe Villolobos was there, whatever his last name is.

"Q. I believe that is Joe, Joe Villolobos. A. We call him Villolobos.

"Q. Are you positive that Joe Villolobos was not there the first time? A. No he wasn't. * * *

"Q. Mrs. Finch, when the officer returned for the second time that you testified to on cross examination, the defendant himself was there? A. Yes.

"Q. Was the defendant in the company of any of his friends? A. Not that went out with him.

"Q. Not that went out with him? A. No.

"Q. Were you as positive about his identification at that time as you are now? A. Yes. * * *

"Q. Did you actually see Fred Romero walk out of the Buffalo Steak House with the jacket on his arm or anything of that? A. Yes, I did.

"Q. You are quite positive that it wasn't Rueben Montez or Joe Villolobos? A. No, because Joe wasn't in there when he took the jacket."

It is the rule established by this court that before a court can be put in error on direct examination of a witness in sustaining an objection to a question, where the question does not clearly indicate the answer itself, that an offer of proof must have been made and denied. See State v. Toy, 65 Mont. 230, 211 P. 303, and State v. Bain, 130 Mont. 90, 295 P.2d 241.

The seventh and final specification of error when summed up goes to the competency of trial counsel. Admitting that this is the first criminal case tried by the defendant's court-appointed counsel and that such counsel lost the case, it now appears that defendant is taking the opportunity to try his former attorney, a rather newly discovered appellate technique. It is easy for appellate counsel to have 20-20 hind-

sight vision, in view of the fact he did not try the case. However, we must realize that few trials are free from mistakes of counsel. We have no means which can determine how such mistakes determine the case nor how many errors an attorney can make before his representation becomes so ineffective that it prejudices his client, but it is safe to say that before a case will be reversed, there must be such a representation that it is so lacking in competence it becomes the duty of the court either at the trial stage or at the appellate stage to correct it. There is no such showing in this case. Diggs v. Welch, (U.S. D.C.1945) 148 F.2d 667.

Two Federal cases, Washington v. United States, (9th Cir. 1961), 297 F.2d 342 and United States v. Sumpter, 111 F.Supp. 507, affirmed in 228 F.2d 290, have this to say about counsel. In the Washington case, supra, the court said:

"Where appellant was represented at all times by counsel, to prevail on a charge of inadequate representation it is necessary to show that which was done or not done by counsel for appellant which made his trial a farce and mockery of justice, shocking to the conscience of the court."

In the Sumpter case, supra, p. 511 of 111 F.Supp., the court said:

"Petitioner was entitled to a fair trial. He was not entitled to a flawless trial. He was entitled to reasonably competent counsel. He was not entitled to infallible counsel."

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DOYLE, ADAIR and CASTLES, concur.